**Joel T. HOWARD, Plaintiff-Appellant,**

v.

**UNIROYAL, INC., Defendant-Appellee.**

**No. 82–7407.**

United States Court of Appeals, Eleventh Circuit.

Nov. 21, 1983.

---

Alvin T. Prestwood, Claude P. Rosser, Jr., Montgomery, Ala., for plaintiff-appellant.

Peyton Lacy, Jr., Birmingham, Ala., Harry N. Turk, Ben Fernandez, New York City, for defendant-appellee.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

JOHNSON, Circuit Judge:

Section 503 of the Rehabilitation Act of 1973, as amended, requires every contract in excess of $2,500 with any federal department or agency to "contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals." 29 U.S.C.A. § 793(a).[1] Section 503 also provides that any handicapped individ-

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. 29 U.S.C.A. § 793 (1982) provides:

§ 793. Employment under Federal Contracts

(a) Amount of contracts or subcontracts; provision for employment and advancement of handicapped individuals; regulations

Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and non-personal services (including construction) for the United States shall contain a provision

ual who believes any contractor has failed or refuses to comply with this provision may file a complaint with the Department of Labor. 29 U.S.C.A. § 793(b). The requirement of the affirmative action provision may be waived, in whole or in part, by the President. 29 U.S.C.A. § 793(c). Pursuant to section 503, implementing regulations have been promulgated by the Department of Labor and its Office of Federal Contract Compliance Programs ("OFCCP") setting forth a uniform affirmative action clause and providing a detailed administrative enforcement mechanism for its breach.[2]

requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

(b) Administrative enforcement; complaints; investigations; departmental action

If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and take such action thereon as the facts and circumstances shall warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

(c) Waiver by the President; national interest special circumstances for waiver of particular agreements

The requirements of this section may be waived, in whole or in part, by the President with respect to a particular contract or subcontract, in accordance with guidelines set forth in regulations which he shall prescribe, when he determines that special circumstances in the national interest so require and states in writing his reasons for such determination.

2. Executive Order No. 11758, 39 Fed.Reg. 2075 (Jan. 15, 1974), as amended by Executive Order No. 11784, 39 Fed.Reg. 19443 (May 30, 1974), authorizes the Secretary of Labor to promulgate regulations for the enforcement of section 503, including regulations providing for waiver of its provisions. Regulations have been promulgated governing the affirmative action obligations of contractors and subcontractors or handicapped individuals, and are found at 41 C.F.R. § 60–741.1 et seq. (1983).

The uniform affirmative action clause required pursuant to section 503(a) is set forth at 41 C.F.R. § 60–741.4:

§ 60–741.4 Affirmative action clause.

Each agency and each contractor and subcontractor shall include the following affirmative action clause in each of its covered government contracts or subcontracts (and modifications, renewals, or extensions thereof if not included in the original contract).

AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS

(a) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: Employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

(b) The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

(c) In the event of the contractor's noncompliance with the requirements of this clause, actions for noncompliance may be taken in accordance with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

(d) The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices in a form to be prescribed by the Director, provided by or through the contracting officer. Such notices shall state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants for employment, and the rights of applicants and employees.

(e) The contractor will notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of section 503 of the Rehabilitation Act of 1973, and is committed to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

(f) The contractor will include the provisions of this clause in every subcontract or purchase order of $2,500 or more unless ex-

■ This appeal presents a single issue: does section 503 pre-empt a qualified handicapped individual's claim under state law as a third party beneficiary of the affirmative action clause contained in contracts between his employer and the federal government? Holding that it does, we affirm the district court's dismissal of plaintiff's third party beneficiary action for failure to state a claim upon which relief can be granted.

Plaintiff Joel T. Howard filed the complaint in this case on July 22, 1982, in the United States District Court for the Middle District of Alabama. Pertinent to this appeal, plaintiff's second cause of action [3] alleged a contract claim under Alabama law as a direct third party beneficiary of the section 503(a) affirmative action clause contained in contracts between Uniroyal and the federal government. Jurisdiction of this claim was predicated upon diversity of citizenship between plaintiff and Uniroyal under 28 U.S.C.A. § 1332.[4] Plaintiff sought damages, specific performance and injunctive relief for breach of the affirmative action clause. The district court, 543 F.Supp. 490 (M.D.Ala.1981), dismissed plaintiff's second cause of action for failure to state a claim on the grounds that plaintiff's state law contract action was pre-empted by section 503. This appeal followed.

Accepting, as we must on appeal from a judgment of dismissal for failure to state a claim, the allegations of the plaintiff's complaint as true, we find that plaintiff is a qualified handicapped individual; that Uniroyal is a party to contracts in excess of $2,500 with the federal government and is thus contractually obligated to take affirmative action to employ and advance in employment qualified handicapped individuals; and that Uniroyal's demotion of plaintiff from a salaried position to a more physically strenuous hourly position breached this agreement. The fact of handicapped based discrimination, breaching the affirmative action clause required by section 503, does not, however, resolve the issue raised by this appeal. The further inquiry remains: did Congress intend the remedy provided in section 503(b) of administrative enforcement to pre-empt plaintiff's state law breach of contract action?

■ Initially we note that both parties acknowledge the well established principle that the touchstone of pre-emption analysis is Congressional intent, and accept the framework of pre-emption analysis set forth in *Pennsylvania v. Nelson*, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956), and applied by the district court. Plaintiff contends, however, as he must, that an analysis of Congressional intent in section 503 to pre-empt state law is wholly independent and distinct from an analysis of whether Congress intended in section 503 to create a federal implied private cause of action. In *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.1980),[5] the former Fifth Circuit extensively reviewed the available evidence of Congressional intent in section 503 and held that Congress did not intend to provide handicapped individuals with an implied private cause of action under section 503. We agree with plaintiff that pre-emption and implied private cause of action analyses are distinct modes of divining Congressional

---

empted by rules, regulations, or orders of the Secretary issued pursuant to section 503 of the Act, *so that such provisions will be binding upon each subcontractor or vendor.* The contractor will take such action with respect to any subcontract or purchase order as the *Director of the Office of Federal Contract Compliance Programs* may direct to enforce such provisions, including action for noncompliance.
The *regulations governing general enforcement* and complaint procedure are found at 41 C.F.R. § 60–741.20—60–741.54.

**3.** The district court's grant of summary judgment on plaintiff's first cause of action under the Age Discrimination in Employment Act is not contested in this appeal.

**4.** Alabama law recognizes a direct third party beneficiary action to enforce a contract. *Harris v. Board of Water & Sewer Commissioners of Mobile,* 294 Ala. 606, 320 So.2d 624 (1975). Uniroyal does not contend that plaintiff has failed to allege the essential elements of this claim.

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent.

intent. *Cf. Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), *with Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). We agree that *Rogers* is not controlling in the present case.[6] We hold, however, that the district court properly considered the *Rogers* court's findings concerning the legislative history, structure, purpose and scope of section 503 and its implementing regulations within the framework of pre-emption analysis. At a bare minimum, the focus of both the pre-emption and implied private cause of action analysis here is on the same evidence of the intent of Congress. Although Congress clearly could evidence an intent to permit third party beneficiary actions and to prohibit an implied cause of action in the same piece of legislation, we find that Congress' intent as to both coincides in section 503.

▆▆▆ Mindful of the Supreme Court's admonition that its "prior cases on pre-emption are not precise guidelines . . ., for each case turns on the peculiarities and special features of the federal regulatory scheme in question," *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 638, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973), we first examine the general principles for determining Congressional intent developed in the pre-emption context. The intent of Congress to pre-empt state law may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Explicit pre-emptive language may be found on the face of the statute itself, in its legislative history, or in regulations promulgated pursuant to the statute. *See Fidelity Federal Savings & Loan Association*

*v. de la Cuesta,* —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664, 675 (1982) ("[f]ederal regulations have no less pre-emptive effect than federal statutes."). "Where Congress has not stated specifically whether a federal statute has occupied a field in which the states are otherwise free to legislate, different criteria have furnished touchstones for decision." *Pennsylvania v. Nelson,* 350 U.S. 497, 501–02, 76 S.Ct. 477, 479–80, 100 L.Ed. 640 (1956) (footnote omitted). The district court applied the three tests followed in *Pennsylvania v. Nelson* to determine if plaintiff's third party beneficiary action is pre-empted by section 503: 1) whether the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it; 2) whether the federal statute touches upon a field in which the federal interest is so dominant that the federal system is assumed to preclude enforcement of state laws on the same subject; and 3) whether the enforcement of the state law presents a serious danger of conflict with the administration of the federal program. Recently, in determining whether state real property law was pre-empted by a regulation of the Federal Home Loan Bank Board pursuant to the Home Owners' Loan Act of 1933, the Supreme Court reiterated these guidelines:

> Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulations may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed

---

**6.** We also reject Uniroyal's argument that this case presents the issue reserved in footnote five of *Rogers:*

> The plaintiffs do not assert a claim based on punitive status as third party beneficiaries of a federal contract, and we do not undertake to discuss the issues, neither briefed nor argued on appeal, whether a federal contract containing provisions required by statute creates a third-party beneficiary relationship, *see* Restatement of Contracts §§ 133–147

(1932), and what would be the jurisdictional basis for a suit by such a third-party beneficiary in a federal court. If the thesis is plausible, we would also need to consider whether implication of a third-party beneficiary claim turns on the same considerations as implication of a private cause of action.

Footnote five of *Rogers* refers to the implication of a federal third party beneficiary claim, and not the pre-emption of a pre-existing state law third party beneficiary action.

to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of the obligations imposed by it may reveal the same purpose.' *Fidelity Federal Savings & Loan Association v. de la Cuesta* [—— U.S. ——, ——, 102 S.Ct. 3014, 3022], 73 L.Ed.2d 664, 675 (1982) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947)).

Congress' authority to supplant state law is no less because the state's power is exercised by the state judiciary through the common law rather than by the state legislature. *Sperry v. Florida*, 373 U.S. 379, 403, 83 S.Ct. 1322, 1335, 10 L.Ed.2d 428 (1963). Congress' implicit intent to supplant state law, however, must clearly manifest: "[i]t will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so. The exercise of federal supremacy is not lightly presumed." *Schwartz v. Texas*, 344 U.S.

199, 203, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952).

In light of these principles for ascertaining Congress' intent, we begin our examination of section 503. Initially we seek an explicit declaration of Congress' intent to pre-empt state law. The face of section 503 does not expressly preclude state actions. However, we note that the provision of an administrative remedy in section 503(b) may be read to preclude other remedies, both state and federal.[7] Further, section 503(c) provides for a waiver of the affirmative action clause in federal contracts under special circumstances.[8] Such a power of waiver, lodged firmly in the federal government, is at least some indication that Congress intended to preclude state contract actions in some cases.

The legislative history of the Rehabilitation Act of 1973 contains little reference to Congress' intention regarding section 503. *See* Sen.Rep. No. 93–318, 93d Cong., 1st Sess., pp. 12–16 (1973); U.S.Code Cong. & Ad.News, p. 2076. "The statute's muteness, therefore, is not given meaning by the

7. Compare *Rogers v. Frito-Lay, Inc.,* 611 F.2d at 1084–85:

> The provision of an express administrative remedy for qualified handicapped persons creates at least some basis to conclude that a private right of action would be inconsistent with the purposes of the legislative scheme. As the Supreme Court has noted, "This principle of statutory construction reflects an ancient maxim—*expressio unius est exclusio alterius.*" *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 1974, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646, 652. "[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies," the Court reasoned. *Id.* For, " '[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' *Botany Worsted Mills v. United States,* 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)." *Id. See also Transamerica Mortgage Advisors, Inc. v. Lewis,* 1979, 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146, 155 ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

8. Section 503(c)'s waiver power is granted by Congress to the President. Pursuant to Executive Order No. 11758, 39 Fed.Reg. 2075 (Jan. 15, 1974), as amended by Executive Order No. 11784, 39 Fed.Reg. 19443 (May 30, 1974), regulations for waiver of section 503's provisions are promulgated by the Secretary of Labor. Such regulations have been promulgated by the OFCCP and are found at 41 C.F.R. § 60–741.3 (1983). 41 C.F.R. § 60–741.3(b) provides:

> (b) *Waivers.* (1) Specific contracts and classes of contracts. The head of an agency, with the concurrence of the Director, may waive the application to any contract or subcontract of any part of or all the affirmative action clause when he or she deems that special circumstances in the national interest so require. The agency head, with the concurence [sic] of the Director, may also grant such waivers to groups or categories of contracts or subcontracts of the same type where it is (i) in the national interest, (ii) found impracticable to act upon each request individually, and (iii) where such waiver will substantially contribute to convenience in administration of section 503 of the Act.

As the court in *Rogers v. Frito-Lay, Inc.,* noted: "It is ... difficult to believe that Congress intended a private cause of action under section 503 since it failed to comment on an Executive Order which allows contracting departments to exempt contracts from the section's provisions." 611 F.2d at 1081 n. 7.

voices in the legislative background." *Rogers v. Frito-Lay, Inc.,* 611 F.2d at 1078. The most extensive discussion of Congressional intent pertaining to section 503 is found in the legislative history of the 1974 amendments to the Rehabilitation Act. *See* Sen. Conf.Rep. No. 93–1270, 93d Cong., 2d Sess., pp. 25–28; U.S.Code Cong. & Ad.News, pp. 6373, 6390–91. The Senate Conference Committee Report stated that:

> It is intended that sections 503 and 504 be administered in such a manner that a consistent, uniform, and effective Federal approach to discrimination against handicapped persons would result. Thus, Federal agencies and departments should cooperate in developing standards and policies so that there is a uniform, consistent Federal approach to these sections.

> U.S.Code Cong. & Ad.News at 6391.

Appended to Senate Report No. 93–1297, the correspondence between the Senate Committee on Labor and Public Welfare and the Office of the Secretary of Labor discusses at length the disappointment of the Committee with the interim regulations under section 503 promulgated by the Secretary of Labor. *See* U.S.Code Cong. & Ad.News, p. 6425 (1974). "The numerous specific and detailed criticisms of the Committee [in its letter of August 21, 1974] address problems associated with the Department of Labor's internal handling of complaints and the imposition of sanctions upon government contractors by that department." *Anderson v. Erie Lackawanna Railway Co.,* 468 F.Supp. 934, 938 (E.D.Ohio 1979). The correspondence is concerned solely with the administration of a federal enforcement scheme. The emphasis on a uniform federal enforcement scheme under section 503 is also some evidence that Congress did not consider state contract actions as a means of enforcing that section.

In sum, although some evidence of an intent to preclude state contract actions to enforce section 503 can be found on the face of the statute and in its legislative history, no express statement that state contract actions are superseded is there present.

At oral argument, plaintiff apparently contends that 41 C.F.R. § 60–1.1 (1983)[9] expresses a clear intent to preserve state contract actions: "The rights and remedies of the Government hereunder are not exclusive and do not affect rights and remedies provided elsewhere by law, regulation or contract." Of course, only the rights and remedies of the government are stated to be non-exclusive, and the natural reading of the second phrase is that the rights and remedies of the government do not affect rights and remedies provided elsewhere by law, regulation or contract. No mention is made of the rights and remedies of handicapped individuals provided by section 503(b) and its implementing regulations; whether section 503(b) rights and remedies are non-exclusive; and whether section 503(b) rights and remedies affect rights and remedies provided by state contract law. Instead, the omission of a reference to handicapped individuals in this statement could be argued as expressive of an intent that the remedies provided by section 503(b) are exclusive. Such an argument receives further support from the language of 41

---

**9.** Plaintiff's citation to 41 C.F.R. § 60–1.1(b) is inaccurate. The regulations in full force and effect as of July 1, 1983, are contained in Title 41, Chapter 60 of the Code of Federal Regulations. Chapter 60 is further divided into parts. Part 60–1 governs the obligations of contractors and subcontractors under Executive Order 11246, requiring, among other things, equal opportunity clauses in all contracts between private contractors and the federal government prohibiting discrimination and requiring affirmative action in employment practices "without regard to race, color, religion, sex or national origin." Section 60–1.1 is the first section of Part 60–1, and contains the language quoted in full in text. Part 60–741 governs the affirma-

tive action obligations of contractors and subcontractors. No parallel to the language of 60–1.1 appears in Part 60–741. Plaintiff's confusion, however, is understandable. As an appendix to Chapter 60, the text of several "postponed" regulations appears. These regulations are currently pending and are not effective as of the date of the last Federal Register, September 29, 1983. The text of postponed regulation 60–1.1(b) expands its coverage to section 503, and contains the language quoted in text. The distinction between the effective regulations and the postponed regulations is irrelevant to our analysis of an explicit intent to preserve state contract actions as manifested in the regulations.

C.F.R. § 60–741.32: "The procedures set forth in the regulations in this part govern *all* disputes relative to a contractor's compliance with the affirmative action clause and the requirements of this part." (emphasis supplied). Certainly this regulation can be read as an explicit manifestation of an intent to preclude any actions based on a contractor's noncompliance with the affirmative action clause, thus necessarily precluding state contract actions. We find, however, that although strong and compelling evidence of intent to preclude state actions, the language of § 60–741.32 still falls short of an express statement that state law is pre-empted by section 503.

Having found no explicit statement of Congress' intent in section 503 to pre-empt state contract law, we turn to an examination of section 503 seeking to ascertain Congress' implicit intent. In so doing, we first determine if the scheme of federal regulation provided by section 503 is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it. *See Pennsylvania v. Nelson*, 350 U.S. 497, 502, 76 S.Ct. 477, 480 (1956).

The regulatory scheme set up in the statute and its implementing regulations is both thorough and precise. Section 503(b) provides that any handicapped individual who believes any contractor has failed or refuses to comply with the affirmative action provision in his contract with the federal government may file a complaint with the Department of Labor. The implementing regulations fully flesh out this enforcement mechanism. The Director of OFCCP is responsible for investigating the complaint.[10] The contents of the complaint are set forth, and the applicable filing deadline.[11] Where the contractor has an inter-nal review procedure, the complaint will be referred to the contractor for sixty days. Failing resolution satisfactory to the complainant within sixty days, the Director proceeds with the investigation.[12] If the Director determines that no violation of section 503 has occurred or decides not to initiate administrative or legal proceedings against the contractor, the complainant must be notified and may within thirty days request review of this decision.[13] If the Director's investigation indicates a violation of the affirmative action clause or the regulations, "the matter should be resolved by informal means, including conciliation and persuasion, whenever possible."[14] If the "apparent violation" is not resolved informally, the Director may "seek appropriate judicial action to enforce the [affirmative action] contractual provision ... including appropriate injunctive relief."[15] In addition to seeking judicial action, the Director may impose administrative sanctions on the contractor, including withholding progress payments, termination of the contract, and debarment of the contractor from receiving future federal contracts.[16] The contractor has a right to a formal hearing when the Director finds an apparent violation of the affirmative action clause or upon proposed administrative sanctions.[17]

The comprehensiveness and pervasiveness of the enforcement scheme provided by section 503 and its implementing regulations for breach of the affirmative action clause are self-evident. The detail and precision with which Congress provided the means for the enforcement of the affirmative action clause makes it reasonable to infer that Congress left no room in section 503(b) for state contract actions to supplement it. *Cf.*

---

**10.** 41 C.F.R. § 60–741.25; *see also* 41 C.F.R. § 60–741.26(e), requiring the Department of Labor to "institute a prompt investigation of each complaint and, ... develop[e] a complete case record," composed of "(1) the name and address of each person interviewed, (2) a summary of his or her statement, (3) copies or summaries of pertinent documents, (4) a narrative summary of the evidence disclosed in the investigation as it related to each charge, and (5) recommended findings and resolution."

**11.** 41 C.F.R. § 60–741.26(a), (c) & (d).

**12.** 41 C.F.R. § 60–741.26(b).

**13.** 41 C.F.R. § 60–741.26(g).

**14.** 41 C.F.R. § 60–741.28(a).

**15.** 41 C.F.R. § 60–741.28(b).

**16.** 41 C.F.R. § 60–741.28(c), (d) & (e).

**17.** 41 C.F.R. § 60–741.29.

*Chicago v. North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981); *Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). Further, this implicit indication of pre-emptive intent from the purpose and structure of section 503(b) is reinforced by the expressions of pre-emptive intent previously noted from the face of section 503 itself, the legislative history of the 1974 amendments to the Rehabilitation Act, and the regulations. *Cf. New York Department of Social Services v. Dublino,* 413 U.S. 405, 415, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688 (1973).

Pre-emptive intent may also be inferred if section 503 is found to touch upon a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. *See Pennsylvania v. Nelson,* 350 U.S. 497, 504, 76 S.Ct. 477, 481 (1956). We find that the federal interest expressed by section 503 lies at least in the interest of the federal government in determining with whom and on what conditions it will contract.[18] Further, Congress has expressed an interest in section 503 in promoting a "consistent, uniform and effective Federal approach" to breaches of the government's contracts with private contractors. Plaintiff contends that any interest of the federal government is far outweighed by the magnitude of the state's traditional interest in preserving the sanctity of contracts and binding parties to the terms of their agreements. It is unexceptionable that the enforcement of contracts is a matter of concern to the states. Pre-emption doctrine, however "is not inapplicable because real property law is a matter of special concern to the states: 'The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that federal law must prevail.'" *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664, 675 (1982) (*quoting Free v. Bland,* 369 U.S. 663, 666, 82

S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962)). Pre-emption doctrine is equally applicable to state contract law. The concern of the third party beneficiary action that the affirmative action clause in federal contractor's agreements be enforced mirrors that of the federal enforcement scheme of section 503(b) and its implementing regulations. A state's interest in enforcing a federal contract is no greater than the federal interest.

Plaintiff relies on *Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), as establishing that the federal government's interest in this case is negligible. In *Miree,* the Supreme Court held that state law, and not federal common law, governed a third party beneficiary action, grounded in diversity jurisdiction under 28 U.S.C.A. § 1332, based on breach of the provisions of a statutorily required contract between DeKalb County, Georgia, and the Federal Aviation Administration.

> While federal common law may govern even in diversity cases where a uniform national rule is necessary to further the interests of the Federal government, *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), the application of federal common law to resolve the issue presented here would promote no federal interests even approaching the magnitude of those found in *Clearfield Trust...*
>
> 433 U.S. at 29, 97 S.Ct. at 2493 (footnote omitted).

The decision in *Miree,* however, was expressly conditioned on the fact that Congress had not legislated in the area of the conduct sought to be enforced by the state. The Court noted the substantial interest of the federal government in regulating aircraft travel and promoting aircraft travel safety, but found this interest too abstract and speculative absent legislative expression to require the application of federal common law. "We adhere to the language in *Wallis [Wallis v. Pan American Petrole-*

---

18. *Cf. Rogers v. Frito-Lay, Inc.,* 611 F.2d at 1079: "The statute [section 503] was intended at the least to direct federal agencies to use their purchasing power to improve employment opportunities for 'qualified handicapped individuals.'"

*um Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1943) ] ... stating that the issue of whether to displace state law on an issue such as this is primarily a decision for Congress. Congress has chosen not to do so in this case." 433 U.S. at 32, 97 S.Ct. at 2495 (footnote omitted).

Congress' failure to express in legislation its substantial interest in regulating aircraft travel in *Miree* stands in stark contrast to Congress' expression in section 503(b) and its implementing regulations of its interest in regulating the enforcement of the affirmative action clause required in all government contracts in excess of $2,500. In this case, Congress has expressed in legislation, section 503(b), its interest in determining the methods by which the affirmative action clause in federal contracts will be enforced by private individuals. We find this interest in enforcing the affirmative action clause, expressed in section 503(b) and its implementing regulations, to be more substantial than that of the state in providing a remedy in this limited class of third party beneficiary actions to enforce the same affirmative action clause. *Miree* supports an inference of pre-emptive intent in this case based on the dominance of the federal interest in determining the terms, conditions and methods of enforcement of federal contracts containing section 503(a) affirmative action clauses, with the resulting displacement of state law in this area.

 Pre-emptive intent can also be inferred when the enforcement of state law presents a serious danger of conflict with the administration of the federal program. *See Pennsylvania v. Nelson,* 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). Likewise, pre-emptive intent may be inferred if the object sought to be obtained by the federal law and the character of the obligations imposed by it reveal a purpose to preclude the enforcement of state laws on the same subject. *See Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 644, 675 (1982) (*quoting Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). As we have previously noted, at least one of the objects of

Congress in providing for an administrative enforcement scheme for section 503 was to insure that there would be a uniform, consistent federal approach to discrimination against handicapped persons by federal contractors. The danger of conflict between such a uniform federal enforcement scheme and third party beneficiary actions here presented further supports a finding of pre-emptive intent in this case. The existence of such a conflict is apparent considering the identity of the conduct underlying both plaintiff's third party beneficiary action and the administrative action provided by section 503(b). It is undisputed that plaintiff could have brought his claim through the administrative enforcement scheme specifically provided by Congress to remedy such breaches of the affirmative action clause. In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), the Supreme Court commented on a similar identity of purpose between the National Labor Relations Act and state tort law:

When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct plainly within the central aim of federal regulation involves too great a danger of conflict between the power asserted by Congress and the requirements imposed by State law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

*See also Sears Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 197, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209 (1978) ("The critical inquiry, therefore, is not whether the State is enforcing a law

relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.")

■ Allowing state court enforcement of the affirmative action clause would create a potential frustration of the administrative scheme provided by section 503(b). In interpreting the obligations imposed by the affirmative action clause, a state court would necessarily refer to regulations imposing and delineating these obligations.[19] Further, in keeping with the objective of a uniform, consistent federal enforcement scheme, the regulations place the responsibility for interpreting section 503 and its implementing regulations on the Secretary of Labor: "[r]ulings or interpretations of the Act and the regulations contained in this Part 741 shall be made by the Secretary or his or her designee."[20] Varying state law interpretations of the obligations of federal contractors under their affirmative action agreements would frustrate the uniformity of decision necessary to develop a consistent federal approach to section 503(b) enforcement.

The objective of informal dispute resolution through conciliation and persuasion emphasized in the enforcement scheme[21] would likewise be frustrated by state third party beneficiary actions. The procedural mechanisms, including the limitations period in which the complaint must be filed, also vary considerably between section 503(b) and state contract law. The remedies available, including debarment of a contractor from receiving future federal contracts, under section 503(b) are equally distinct from state contract remedies.

In sum, the identity of the present third party beneficiary action and section 503(b)

enforcement and the inherent possibility of conflict between the two further evidence Congress' intent to pre-empt a state law third party beneficiary action seeking enforcement of section 503(b).

This is not a case in which plaintiff, a victim of handicapped based discrimination, has no remedy. We merely hold that in this case the remedy provided in precise detail by Congress in enacting section 503(b) was intended to be the plaintiff's sole means of enforcing the affirmative action clause contained in the contract between his employer and the federal government. So holding, we AFFIRM the district court's dismissal of plaintiff's second cause of action for failure to state a claim upon which relief can be granted.

**19.** *See* 41 C.F.R. § 60-741.5—741.9 (1983).

**20.** 41 C.F.R. § 60-741.54 (1983).

**21.** *See* 41 C.F.R. § 60-741.26(2); 41 C.F.R. § 60-741.28(a) (1983). *Cf. Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1084:
Congress provided a complete administrative scheme to remedy section 503 violations.

The implementing regulations . . . provide explicit details for the operation of that plan. The administrative emphasis is upon "conciliation and persuasion" and on "informal means" of resolution. The regulations make no provision for a private cause of action, suggesting that a private judicial remedy may be difficult to harmonize with the administrative enforcement framework.