Harry F. **FERGERSTROM,**
Jr., **Plaintiff,**

v.

**DATAPOINT CORPORATION and
Intelogic Trace, Inc., Defendants.**

Civ. No. 87–0082.

United States District Court,
D. Hawaii.

Feb. 10, 1988.

Lawrence W. Cohn, Kailua–Kona, Hawaii, for plaintiff.

Gregory M. Sato, Torkildson, Katz, Jossem, Fonseca & Moore, Honolulu, Hawaii, for defendants.

MEMORANDUM OF DECISION AND
ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

LETTS, District Judge.

This is a wrongful discharge lawsuit filed by Plaintiff Harry F. Fergerstrom, Jr.

("Plaintiff") against his former employer, Datapoint Corporation ("Datapoint"), and its partial successor, Intelogic Trace, Inc. ("Intelogic") (collectively "Defendants"). In his lawsuit, Plaintiff alleges the following causes of action: (1) wrongful termination in breach of the public policy exception to the employment-at-will doctrine; (2) wrongful termination in breach of the implied in fact contract exception to the employment-at-will doctrine; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.

Defendants have moved for dismissal and/or summary judgment as to all of Plaintiff's claims. For the reasons stated below, Defendants' Motion for Summary Judgment is granted.

## I. FACTS

Based on the pleadings, memoranda and affidavits submitted in this matter, the Court finds that the following material facts are undisputed.

### A. *Plaintiff Was Hired By Datapoint As an At–Will Employee*

On April 1, 1981, Plaintiff completed Datapoint's "Application for Employment" which stated in pertinent part:

"Further, I understand and agree that my employment is for no definite period and may, regardless of the date of payment of my wages or salary, be terminated at any time without previous notice."

On April 27, 1981, Plaintiff signed Datapoint's "Memorandum of Employment" which read in part as follows:

*General Provsions:*

. . . . .

4. I understand that this agreement does not define any term of employment or limit in any way my right or the company's right to terminate my employment.

. . . . .

I HAVE READ THE FOREGOING MEMORANDUM OF EMPLOYMENT AND UNDERSTAND FULLY THE OBLIGATIONS THEREUNDER. I FURTHER UNDERSTAND THAT THIS IS NOT AN EMPLOYMENT CONTRACT WHICH ENTITLES ME TO EMPLOYMENT FOR ANY DEFINITE PERIOD OF TIME. BY MY SIGNATURE BELOW, I BIND MYSELF LEGALLY TO COMPLY WITH SUCH OBLIGATIONS.

On June 1, 1982, Datapoint instituted a policy of "administratively terminating" any employee who had been on a leave of absence (any work or non-work related illness or accident) for more than 90 days ("Administrative Discharge Policy"). Such a termination was a "no fault" termination because the separation from employment was triggered by the passage of time and not by any specific misconduct by the employee. Under the policy, administratively terminated employees were given the right of preferential reemployment, provided that a position was available and the employee was qualified.

### B. *Plaintiff Was Terminated In Accordance With Datapoint's Policy of Administrativly Terminating Employees on a Leave of Absence for More than Ninety Days*

On September 26, 1984, Plaintiff suffered an on-the-job back injury for which he received workers' compensation benefits.

On June 26, 1985, Plaintiff was notified by letter that he had been administratively terminated as a result of his unavailability for work for more than 90 days. The letter advised Plaintiff that upon his return to work he would be given preference over other applicants for positions which he was qualified.

At about the same time, Datapoint suffered a downturn in business and as a cost-saving measure eliminated 923 positions nationally, including Plaintiff's position.

On April 8, 1986, Plaintiff was released by his physician to return to work. On the same date, Plaintiff wrote Datapoint's lead engineer and requested to return to work.

Without waiting for a response from Defendants, however, Plaintiff filed a work injury complaint with the State of Hawaii

Department of Labor and Industrial Relations ("DLIR"), alleging that he was terminated for filing a workers' compensation injury. On April 28, 1986, Plaintiff filed a handicap discrimination complaint with the Office of Federal Contract Compliance Programs ("OFCCP") alleging that Defendant's termination of Plaintiff violated Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. Section 793 et seq.[1] Plaintiff did not file a grievance as provided by Datapoint's Customer Service Handbook.

## II. DISCUSSION

### A. *Employment–At–Will Doctrine*

The employment-at-will doctrine holds that, in the absence of a contract for a definite period of time, employment is terminable at the will of either party for any reason or no reason. *Parnar v. Americana Hotels, Inc.*, 65 Hawaii 370, 374, 652 P.2d 625, 627 (1982). The only exceptions recognized by the Hawaii Supreme Court are: (1) the public policy exception, *Parnar*, 652 P.2d at 631; and (2) the implied contract exception, *Kinoshita v. Canadian Pacific Airlines, Inc.*, 724 P.2d 110, 116 (1986).

### 1. *Public Policy and Implied In Fact Contract Exceptions:*

■ The public policy exception provides that an at-will employee may be terminated for any reason except where the discharge of the employee violates a clear mandate of public policy. *Parnar*, 652 P.2d at 631. Plaintiff here alleges that his termination was in violation of Hawaii Revised Statutes, Section 378–32(2) and Section 503 of the Rehabilitation Act of 1973.[2]

■ Section 378–32 provides in part as follows:

It shall be unlawful for an employer to suspend, discharge or discriminate against any of his employees:

.    .    .    .    .

(2) solely because the employee has suffered a work injury which arose out of and in the course of his employment with the employer which is compensable under Chapter 386 unless the employee is no longer capable of performing his work as a result of the injury and the employer has no other available work which the employee is capable of performing."

a. *June 25, 1985 Termination:* At the time he was terminated, Plaintiff had been away from work continuously for more than 90 days. No other reason having been asserted for Plaintiff's absence from work, it must be assumed that his absence was "solely because" of a work injury.

It does not necessarily follow, however, that Plaintiff was terminated in violation of the statute. Plaintiff was terminated by operation of the Administrative Discharge Policy, not solely because of his injury, but also because his injury incapacitated him for more than 90 days. Plaintiff here has not contended that, at the time of his termination, he was capable of performing his work. Nor has Plaintiff contended that he indicated to Datapoint in any way that he would be capable of performing some other work which Datapoint might have available. Indeed, by his simple failure to report to work at all, Plaintiff gave Datapoint ample reason to believe that he was totally disabled from work.

Since Section 378–32 does not prohibit termination or other discrimination against employees who are not capable of performing their own or other available work, the Court holds that the termination of Plaintiff by Datapoint did not violate the statute.

---

1. On May 4, 1987, the OFCCP completed its preliminary investigation in which it concluded that Defendants had violated Section 503.

2. Plaintiff cannot maintain a state law wrongful discharge action based on Section 503 since Section 503 preempts any state tort action and because the administrative remedies described in Section 503 are Plaintiff's exclusive remedy. *See Howard v. Uniroyal, Inc.,* 719 F.2d 1552 (11th Cir.1983). Thus, the Court focuses its discussion on Plaintiff's public policy claim based on Section 378–32.

■ b. *Subsequent Failure to Rehire Plaintiff:* Plaintiff contends, however, that the subsequent failure to reemploy him violated Datapoint's own policy and thereby demonstrates that his termination was wrongful and, if not in violation of the statute, was at least a violation of the public policy expressed thereby. It is clear that the policy of Section 378–32 is to ensure that persons who suffer compensable injuries which do not prevent them from working entirely will not be terminated or otherwise be discriminated against solely by reason of the injury.

This policy, while it may be strong, is expressed in extremely limited terms. The termination or other discriminatory action against an injured employee is proscribed only if the employee is able to work and only if the work injury is the sole reason for the employer's action. Plaintiff's allegations simply do not meet these tests.

Furthermore, Datapoint's Administrative Discharge Policy operates on the presumption that someone who has been absent continuously for a period of 90 days or more is not capable of performing his or any other available work and therefore is subject to discharge without violation of the statute. This presumption is entirely reasonable. By giving preference to persons administratively discharged, upon application for rehire, Datapoint's policy reinforces the presumption that it is intended to apply only to persons who either cannot work or refuse to do so and is intended to apply only for so long as that condition persists.

Plaintiff also contends that Datapoint's failure to rehire him on his application for rehire demonstrates that Datapoint's actions in this case were retaliatory acts taken to punish him for the filing of his workers' compensation claim and that, as to him, Datapoint's failure to rehire Plaintiff therefore was applied in violation of Section 378–32 and in violation of Datapoint's Administrative Discharge Policy. As to these contentions, Plaintiff would bear the burden of proof at trial. *Parnar*, 65 Hawaii at 374, 652 P.2d 625.

It is undisputed that Plaintiff's termination resulted from the automatic operation of Datapoint's Administrative Discharge Policy. It is also undisputed that within three weeks of his release by his doctor and his request for permission to return to work, Plaintiff had filed administrative complaints both with the DLIR and OFCCP. Plaintiff has not, however, alleged any facts from which a jury could reach a conclusion that Datapoint's actions were retaliatory acts for Plaintiff's filing the administrative complaints.

It is clear that an employer cannot terminate an employee in retaliation against an employee's filing of an administrative complaint of unlawful employment practices from which he has suffered. It is far less clear, however, that a terminated employee seeking *rehire* is in the same position vis-a-vis complaints deemed by the employer to be groundless or over the manner in which he was terminated. Based on the facts presented here, however, the Court does not need to address the issue. It is undisputed that Plaintiff's position was eliminated as part of a national force reduction which followed from a downturn in Datapoint's business, and that he has not been replaced. It is also undisputed that there was reason to select Plaintiff as the employee whose position would be eliminated without reference to any injury or history of injuries which he may have suffered.[3] Plaintiff, therefore, cannot properly contend that his compensable injury was the "sole" reason for his discharge. Since Section 378–32(2) itself expressly limits its application to circumstances in which the compensable injury is the sole reason for the employer's action, it is not for the courts to expand this limited policy by judicial instruction.

Because Plaintiff's position has not been refilled, and absent any independent showing by Plaintiff that Datapoint's actions were retaliatory acts for Plaintiff's filing

---

**3.** While it is important for courts to protect individual employees from abuses by their employers, it is equally important to protect other employees who, if their case were brought in the alternative, would be even more appealing.

the administrative complaints, there is no basis for a jury conclusion that the reason Plaintiff was not rehired was pursuant to an unlawful purpose. The failure of Datapoint to rehire Plaintiff was entirely in accord with its obligations to the Plaintiff.

By the same token, because Plaintiff's position was eliminated and Plaintiff was not replaced pursuant to a legitimate business decision, Plaintiff has not presented facts to support a breach by Datapoint[4] of an implied in fact contract.[5] Accordingly, the Court also finds no implied contract exception to the employment-at-will doctrine.

### B. *Remaining Causes of Action*

In light of the Court's ruling on Plaintiff's public policy and implied contract claims, Plaintiff's claims for intentional and negligent infliction of emotional distress require little discussion. Plaintiff's emotional distress claims are premised upon a wrongful termination of Plaintiff. Because the Court finds that Plaintiff was not wrongfully terminated, Plaintiff's emotional distress causes of action necessarily must fail,[6] and summary judgment is granted in favor of Defendants.

### III. CONCLUSION

Plaintiff has failed to establish any issue of fact or law that would preclude summary judgment for Defendants. In addition, as the Court ruled during oral argument, the Court rejects Plaintiff's request that its *Parnar* argument be certified to the Hawaii Supreme Court for consideration.

For all the reasons stated herein, the Court grants summary judgment to Defendants Datapoint and Intelogic and this action is hereby dismissed with prejudice.

---

4. Here, Plaintiff claims that Datapoint's "Policies and Procedures Manual" and the "Customer Service Handbook" constitute such an implied contract. The Court is doubtful that Plaintiff has introduced evidence which a reasonable jury could conclude that Plaintiff reasonably relied upon Datapoint's policies and procedures as a basis for an implied contract. However, even if the Court were to find that an implied contract did exist, there would be no basis for a jury conclusion that the failure of Datapoint to rehire Plaintiff was a violation of an implied in fact contract.

5. *See generally Cox v. Resilient Flooring Div. of Congoleum Corp.,* 638 F.Supp. 726, 731–34 (C.D. Cal.1986).

6. *Cf. McCabe v. General Foods Corp.,* 811 F.2d 1336 (9th Cir.1987) (applying California law).