205 So.2d 595

RADIO BROADCAST TECHNICIANS LOCAL UNION NO. 1264, International Brotherhood of Electrical Workers, AFL-CIO,

v.

JEMCON BROADCASTING COMPANY, Inc.

I Div. 143.

Supreme Court of Alabama.

Dec. 21, 1967.

Rehearing Denied Jan. 18, 1968.

Pierre Pelham, Mobile, and J. R. Goldthwaite, Jr., of Adair, Goldthwaite & Stanford, Atlanta, Ga., for appellant.

Willis C. Darby, Jr., of Kilborn, Darby & Kilborn, Mobile, for appellee.

LAWSON, Justice.

This is an appeal by the Radio Broadcast Technicians Local Union No. 1264, International Brotherhood of Electrical Workers, AFL–CIO, an unincorporated association, hereinafter sometimes referred to as Local 1264, and sometimes referred to as appellant, from a decree of the Circuit Court of Mobile County, in Equity, denying the motion of Local 1264 to dissolve a temporary injunction, issued ex parte, which enjoined said Local 1264 from picketing the places of business of appellee, Jemcon Broadcast-

ing Company, Inc., a corporation, which operated Radio Station WLIQ in Mobile, and which also enjoined Local 1264 from otherwise interfering wtih appellee in the conduct of its radio broadcasting business.

E. W. Jemison and Frank Conwell, a partnership doing business as Jemcon Broadcasting Company, commenced construction of Radio Station WLIQ in October of 1960. The partnership operated WLIQ until October 1, 1962, when "E. W. Jemison and Frank Conwell, partners doing business as Jemcon Broadcasting Company, transferred all of their assets to Jemcon Broadcasting Company, Inc., and Jemcon Broadcasting Company, Inc., assumed all of the liabilities of E. W. Jemison and Frank Conwell, partners, doing business as Jemcon Broadcasting Company." After October 1, 1962, Jemcon Broadcasting Company, Inc., operated WLIQ, formerly operated by E. W. Jemison and Frank Conwell, partners, doing business as Jemcon Broadcasting Company.

The change in ownership and operation of Radio Station WLIQ is not material. Both parties to this appeal seem to agree that certain events, to which we will hereinafter refer, although occurring during the time WLIQ was owned and operated by the partnership, are material to the question presented for determination on this appeal, although the decree here under review was rendered in a proceeding instituted against Local 1264 by the appellee, Jemcon Broadcasting Company, Inc., a corporation, on February 19, 1963. Sometimes we will refer to both the partnership and the corporation as WLIQ.

Local 1264 in October, 1960, began efforts to organize the technician employees of the station by writing Mr. Conwell relative to signing a "standard working agreement" and thereby recognizing appellant as the exclusive bargaining representative of appellee's employees.

The end result of appellant's request for recognition was that on August 31, 1961,

WLIQ declined to recognize the appellant, stating, "When you have received certification, we will be happy to discuss the matter with you."

On September 14, 1961, appellant began picketing WLIQ's office and transmitter in Mobile, Alabama, with signs bearing the inscription: "WLIQ UNFAIR, LOCAL 1264, IBEW–AFL–CIO" and "WLIQ TECHNICIANS ON STRIKE—LOCAL 1264 IBEW."

On or about September 18, 1961, Local 1264 filed a petition with the National Labor Relations Board for an election for a unit consisting of "all radio technicians including the chief engineer" employed by WLIQ.

On September 25, 1961, the Regional Director of the National Labor Relations Board dismissed the petition for an election filed by appellant on the grounds that "* * * the employer's operations in interstate commerce do not meet the minimum standards of the Board for the assertion of jurisdiction * * *"

The action of the National Labor Relations Board was apparently grounded on the language which we will hereafter quote from Raritan Valley Broadcasting Co., Inc., v. American Federation of Television & Radio Artists, New York Local (AFL-CIO), 122 NLRB page 90, Case No. 22-RC-190, which opinion was rendered by the National Labor Relations Board after a hearing before the full Board on November 14, 1958:

"Ever since the enactment of the National Labor Relations Act in 1935, the Board has consistently held to the position that it better effectuates the policies of the Act and promotes the prompt handling of cases not to exercise its jurisdiction to the fullest extent possible under the authority delegated to it by Congress. For the first 15 years the Board exercised its discretion in this area on a case-by-case basis. In 1950 the Board first adopted certain jurisdictional standards

designed to aid it in determining where to draw the dividing line between exercised and unexercised jurisdiction. In 1954 the Board reexamined its jurisdictional policies in the light of its experience under the 1950 standards and revised its jurisdictional standards. At that time the Board noted that 'further changes in circumstances may again require future alterations of our determinations one way or another.' Consistent with this practice of periodic review of its jurisdictional policies and a direct consequence of the Supreme Court's decision in P. S. Guss, d/b/ Photo Sound Products v. Utah Labor Relations [Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601] denying to the States authority to assert jurisdiction over enterprises as to which the Board declines to exercise its statutory jurisdiction, the Board reexamined its existing jurisdictional policies and the standards through which such policies were implemented. As a result the Board determined to revise its jurisdictional policies at this time so that more individuals, labor organizations and employers may invoke the rights and protections afforded by the statute. In Siemons Mailing Service the Board fully set forth the general considerations which persuaded it that this could best be accomplished by the utilization of revised jurisdictional standards as an administrative aid in making its jurisdictional determinations. The Board has chosen this case to set forth the revised standard to be applied to enterprises operating communication systems.

"The Board has decided that it will better effectuate the policies of the Act to assert jurisdiction in all future and pending cases involving enterprises engaged in the operation of radio or television broadcasting stations or telephone or telegraph systems which do a gross volume of business of at least $100,000 per annum."

Local 1264 did not appeal this action of the Regional Director to the National Labor Relations Board, although it was advised that such was its right and instructions were given by the Regional Director as to how such an appeal could be effected.

On October 5, 1961, the five employees of WLIQ, three of whom were technicians, voted to be represented for the purpose of collective bargaining by the Federation of Licensed Broadcast Employees. That election was conducted by a local minister. Local 1264 asserts that the said election was unlawful under the National Labor Relations Act, as amended, and that the new "labor organization" was organized with the full cooperation of WLIQ and was dominated and controlled by that station.

On October 9, 1961, Station WLIQ and The Federation of Licensed Broadcast Employees entered into a collective bargaining agreement.

In September and October, 1961, appellant by picketing WLIQ's place of business and by letters addressed to persons, firms and corporations advertising over Station WLIQ in Mobile, Alabama, sought to effect a boycott of WLIQ and to cause persons doing business with WLIQ to cease doing business with WLIQ.

On October 24, 1961, WLIQ (the partnership) procured an ex parte injunction in the Circuit Court of Mobile County, in Equity, against Local 1264's activities referred to in the preceding paragraph. That proceeding was docketed in the equity court as Case No. 56,748.

Local 1264 filed pleas to the jurisdiction wherein it averred, in effect, that the Circuit Court of Mobile County, in Equity, was without jurisdiction to issue the injunction in that the National Labor Relations Board had exclusive jurisdiction to adjudicate the subject matter of the bill for injunction.

On or about November 13, 1961, Local 1264 petitioned the National Labor Relations Board for an advisory opinion *as to its jurisdiction* in conformity with § 102.98 of the Board's rules and regulations.

The NRLB designated the petition for advisory opinion as Case No. AO–29. It later rendered a decision wherein it stated that it would assert jurisdiction over the subject matter of Case No. 56,478 and would adjudicate the merits of the dispute between the parties. That decision may have been rendered on or about January 19, 1962. The date of its rendition does not appear in the record, but in briefs filed here it is said that the opinion was rendered on that date.

In any event, Case No. 56,748 came on for final hearing on October 30, 1962, at which time the complainant therein, the partnership, sought to amend the complaint by making the corporation the party complainant. The trial court promptly granted a motion for discontinuance and dismissal on account of the change in parties complainant.

Thereafter, the Federation of Licensed Broadcast Employees filed a representation petition with the National Labor Relations Board. The petition was denied by the Acting Regional Director on September 27, 1962, and review was denied on October 23, 1962. This denial was on the ground that the Board would not assert jurisdiction because the employer's operations in interstate commerce did not meet the minimum standards of the Board. This action was also apparently based on the decision in Raritan Valley Broadcasting Co., Inc., v. American Federation of Television & Radio Artists, etc., supra.

Thereafter, on February 18 and 19, 1963, the Union picketed the premises of Radio Station WLIQ and on February 19, 1963, mailed letters to advertisers on Station WLIQ similar to those previously sent.

Jemcon Broadcasting Company, Inc., immediately filed the present proceeding on February 19, 1963, and secured a second ex parte injunction against the picketing and other activities of the union. The present proceeding was docketed as Case No. 59,486.

The injunction petition alleged that the corporation is in all respects the successor in interest to the partnership of E. W. Jemison and Frank Conwell, d/b/a Jemcon Broadcasting Company, and that the dispute was a continuation of the same labor dispute. Local 1264 later admitted such allegation.

Local 1264 filed seven pleas in abatement to the jurisdiction of the Circuit Court of Mobile County, in Equity. The pleas in abatement asserted, in effect, that the National Labor Relations Board had exclusive jurisdiction over the matters alleged in the complaint.

Station WLIQ twice amended its complaint and Local 1264 filed additional pleas, amending its pleas in abatement as well as filing a sworn answer. These various pleadings and their effect will be more fully discussed later in this opinion.

Local 1264 filed a motion to dissolve the temporary injunction. The trial court denied that motion, as amended and as refiled to the amended complaint. This appeal followed.

The ultimate question for decision is whether the jurisdiction of the Circuit Court of Mobile County, in Equity, to issue a temporary injunction had been preempted by the National Labor Relations Act, as amended.

This is a troublesome question for us inasmuch as we are unaware of any decision of the Supreme Court of the United States which clearly shows where lies the line between permissible and federally preempted state regulation of union activities.

In 1947 Congress enacted the Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., and in so doing preempted the field of labor management relations in interstate commerce as to remove the matter from the jurisdiction of the state courts to a large degree. Suffice it to

say that the Supreme Court of the United States has generally construed the Labor Management Relations Act as preempting the field in labor matters where the conduct complained of affects interstate commerce and, though the state power has not been exclusively absorbed, the states have been left a very narrow field of operation.

It has been decided that a state tribunal may assert jurisdiction and apply federal law in an action involving a violation of a labor-management contract (Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246); that a state may award damages where the action is based on violence or threats of violence (United Construction Workers, etc., v. Laburnum Construction Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025; International Union, U.A., A. & A.I.W., v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030); and the states may enjoin such conduct (Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151). A state court may also enforce a state prohibition against an agency shop (Retail Clerks, etc., v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L. Ed.2d 179); reinstate with back pay an employee discharged in violation of a state union security statute (Algoma Plywood & V. Co. v. Wisconsin Emp. Rel. Bd., 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691); and enforce an arbitration agreement (Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320).

In Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601, a union filed charges with the National Labor Relations Board under § 8 of the Act, declaring that an employer was engaged in unfair labor practices. The Board declined to consider the charges on the ground that the operations were predominantly local. Thereafter the union filed the same charges with the Utah Labor Relations Board and obtained relief, which was affirmed by the Supreme Court of Utah. On appeal to the Supreme Court of the United States the judgment was reversed. The Supreme Court of the United States held that Utah had no power to deal with matters within the jurisdiction of the National Labor Relations Board, even though that Board had declined to exercise its jurisdiction pursuant to the proviso in § 10(a) of the National Labor Relations Act. In other words, the Guss case held, as we interpret it, that even when the National Labor Relations Board refuses to accept jurisdiction, the state could not grant relief unless the National Labor Relations Board by positive act cedes jurisdiction to the state. Thus, a vast "no man's land" was created which afforded no remedy.

In San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 2d 775, the Supreme Court of the United States appears to have undertaken to clarify the earlier preemption cases. The union had sought an agreement that the employer would retain only union members or those who applied for membership within thirty days. The employer refused and the union began picketing and exerting pressure on the employer's customers and suppliers. A suit was instituted in the state court for an injunction and damages and a representation proceeding was started before the National Labor Relations Board. The Board declined jurisdiction and the state court granted both injunctive relief and damages. The United States Supreme Court first determined that the Board's refusal to assert jurisdiction did not leave the state with power over activities it would otherwise be preempted from regulating. See San Diego Bldg. Trades Council et al. v. Garmon et al., 353 U.S. 26, 77 S.Ct. 607, 1 L.Ed.2d 618; Guss v. Utah, supra. On a subsequent appeal the Supreme Court of the United States observed that a state was preempted from regulating the activities in question and that it could grant neither an injunction nor damages; in the course of its opinion the court formulated the now familiar rule that "when an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state

interference with national policy is to be averted." 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 783.

Apparently in order to fill the vacuum created by the *Guss* case, supra, Congress enacted an amendment to the Labor Management Relations Act of 1947, as amended in 1959 (29 U.S.Code Ann. § 164[c] [1] and [2]), providing:

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

Appellee, Station WLIQ, contends that under Alabama Highway Express, Inc., v. Teamsters Local 612, 268 Ala. 392, 108 So.2d 350, "the state possesses jurisdiction to enjoin picketing for an unlawful purpose, although peaceful, when in contravention of the public policy as declared in the State's Right to Work Law."

■■■ We are dealing here with the doctrine of federal preemption as applied to the Taft-Hartley Act. Preemption rests upon the supremacy clause of the Federal Constitution, United States Constitution, Art. VI, Cl. 2, and deprives a state of jurisdiction over matters embraced by a congressional act regardless of whether the state law coincides with, is complementary to, or opposes the federal congressional expression. Bethlehem Steel Co. v. New York State Labor Relations Bd., 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234. Accordingly, congressional action in the area of union security precludes state enforcement of its own legislation in that area, unless Congress has also legislated to allow the states to act in areas where Congress normally would be deemed to have preempted the field. Section 14(b) of the Taft-Hartley Act is such legislation. It provides:

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial Law."

Thus Congress recognized state power to outlaw or restrict the closed shop and related union security devices.

Although Alabama Highway Express, Inc., v. Teamsters Local 612, supra, may be partly distinguishable and partly in conflict, the law applicable to the facts in the case at bar is set out in Retail Clerks International Ass'n, etc., et al. v. Schermerhorn et al., 375 U.S. 96, 84 S.Ct. 219, 223, 11 L.Ed.2d 179, 185, where it was said:

"As a result of § 14(b), there will arise a wide variety of situations presenting problems of the accommodation of state and federal jurisdiction in the union-security field. As noted, Algoma Plywood & Veneer Co. v. Wisconsin Emp. Relations Board, supra [336 U.S. 301, 314, 69 S.Ct. 584, 93 L.Ed. 691], upheld the right of a State to reinstate with back pay an employee discharged in violation of a state union-security law. *On the other hand, picketing in order to get an*

*employer to execute an agreement to hire all-union labor in violation of a state union-security statute lies exclusively in the federal domain* (Local Union 429 v. Farnsworth & Chambers Co., 353 U.S. 969, 1 L.Ed.2d 1133, 77 S.Ct. 1056, and Local No. 438 v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514) *because state power, recognized by § 14(b), begins only with actual negotiation and execution of the type of agreement described by § 14(b).* Absent such an agreement, conduct arguably an unfair labor practice would be a matter for the National Labor Relations Board under Garmon " (Emphasis supplied)

See also: Painter's Local Union No. 567 v. Tom Joyce Floors, Inc., 81 Nev. 1, 398 P.2d 245, 246; Blum v. International Ass'n of Machinists, AFL-CIO, 42 N.J. 389, 201 A.2d 46, 51; City Line Open Hearth v. Hotel, Motel & Club Emp. Union, 413 Pa. 420, 197 A.2d 614; Day v. Northwest Division 1055, 238 Or. 624, 389 P.2d 42, 50, cert. denied, 379 U.S. 878, 85 S.Ct. 145, 13 L.Ed.2d 86; Baltimore Bldg. & Const. Tr. Coun. v. Maryland Port A., 238 Md. 232, 208 A.2d 564, 568; Kitchens v. Doe, (Fla.App.), 172 So.2d 896, 897, rehearing denied (Fla.), 194 So.2d 258; Schnell Tool & Die Corp. v. United Steelworkers, Ohio Com.Pl., 30 Ohio O.2d 318, 200 N.E.2d 727, 732, 94 Ohio Law Abat. 231; Washington v. Chrysler Corp., (Ind. App.), 200 N.E.2d 883, 889; Colorado State Coun. of Carpenters v. District Court, 155 Colo. 54, 392 P.2d 601, 602.

In the case at bar, no agreement had been entered into; consequently we do not believe that the decree of the trial court here under review can be affirmed on the basis of our holding in Alabama Highway Express, Inc., v. Teamsters Local 612, supra.

The remaining question is a confused and complex one indeed. As before mentioned, we are faced with three rulings of the National Labor Relations Board relative to accepting jurisdiction of this labor dispute.

In the first instance, the appellant, Local 1264, filed on or about September 18, 1961, a petition for an election with the National Labor Relations Board. On September 25, 1961, the Regional Director of the NLRB dismissed the petition for an election on the ground that "the employer's operations in interstate commerce do not meet the minimum standards of the Board for the assertion of jurisdiction." As shown above, Local 1264 did not appeal the ruling of the Regional Director. This transaction between Local 1264, appellant, and the NLRB was alleged in the amended bill before the trial court.

In the second instance, on or about November 13, 1961, the appellant union, Local 1264, petitioned the NLRB for an advisory opinion in conformity with § 102.98 of the Board's rules. In this petition the appellant alleged the involvement of secondary employers doing such large amounts of business in interstate commerce so as to invoke the Board's jurisdiction. Designating the case as No. AO–29, the NLRB issued its decision declaring that it would assert jurisdiction over the subject matter of the bill for injunction and would adjudicate the merits of the dispute between the parties. The advisory opinion of the Board indicates: (1) That the Board's standard for exercising jurisdiction over radio stations is a minimum gross volume of business of $100,000 per annum as laid down in Raritan Valley Broadcasting Co., Inc., 122 NLRB 90; (2) that Station WLIQ, the appellee, does not meet this requirement and that fact dictated the disposition of the union's request for election that was previously before the Board; (3) that in the petition for advisory opinion the union alleges the additional facts relative to involvement of secondary employers; (4) that such allegation brings the case within the Board's standard and it would assert jurisdiction. The appellant by its pleas and amended pleas placed before the circuit court the full impact of the advisory opinion to which we have referred. The court found these pleas insufficient, apparently on

the ground that they failed to specify facts with respect to the volume of business conducted by the appellee.

In the third instance, the Federation of Licensed Broadcast Employees, a union allegedly set up by the Station, filed a representation petition with the National Labor Relations Board. The petition was denied by the Regional Director on September 27, 1962, and review was denied on October 23, 1962. In the Director's "Decision and Order" he denied jurisdiction on the theory of lack of "a minimum gross volume of business of $100,000 per annum" as was utilized in the denial of Local 1264's request for an election in the first instance, and in fact, that decision is cited. This denial of the Federation's request was added by appellee when it amended its complaint. It would seem reasonable to assume that the Regional Director was aware of the advisory opinion.

The National Labor Relations Board's authority for the issuance of advisory opinions is found in the Code of Federal Regulations, 29 U.S.C.A., App. §§ 101.39 et seq. and 102.98 et seq.

We think it clear from a reading of these regulations that the Director or Board decides each petition and issues its advisory opinion determining whether it would or would not assert jurisdiction on the basis *of the facts before it*. That is to say, it determines whether to assert or deny jurisdiction on the basis of the jurisdictional facts alleged in the petition.

Quite obviously then, we have the Board denying the election petition, asserting jurisdiction in the advisory opinion, and again denying the representation petition, because only in the petition for advisory opinion was there an allegation as to secondary employers.

As before stated, the Board's action in this area is governed by 29 U.S.C.A. § 164(c) (1) and (2).

In Radio and Television Broadcast Technicians Local Union 1264 etc. et al. v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789, the Supreme Court of the United States reversed this court in a companion case to the one at bar, but the grounds on which the reversal was predicated are not present here. In that case the National Labor Relations Board had not announced that it would decline to hear the case and WLIQ is not an integral part of a group of radio stations.

In the *Broadcast Service Case*, supra, the Supreme Court of the United States did make the following observation:

"Although a state court may assume jurisdiction over labor disputes over which the National Labor Relations Board has, but declines to assert, jurisdiction, 29 U.S.C. §§ 164(c) (1) and (2) (1958 ed., Supp. V), there must be a proper determination of whether the case is actually one of those which the Board will decline to hear. * * *"

Our problem is not to determine if activities are arguably subject to § 7 or § 8 of the Act under *Garmon*, supra, for in our case the National Labor Relations Board has once indicated that it will hear the case (advisory opinion) and has twice declined to do so.

To further complicate the problem, the National Labor Relations Board in rendering its advisory opinion did not hold a hearing, and it has been suggested that such omission may constitute a violation of due process. See Hirsch et al. v. McCulloch et al., 112 U.S.App.D.C. 348, 303 F.2d 208.

The Congress by the passage of the 1959 amendment apparently intended to permit the NLRB by rules and regulations to waive its jurisdiction as to matters which could have been pending before it.

Since Congress does not endow state courts with jurisdiction, but merely

lifts the limitation upon their proceeding in a matter which was in conflict with the federal legislation, it seems to us that a case pending in a state court which has jurisdiction of the parties and the subject matter, but may not proceed when it appears its powers are limited by federal law, regains its power to proceed when the bar is lifted.

There is no question but that the bar was lifted by the Landrum-Griffin Act, supra, if the National Labor Relations Board has seen fit to decline jurisdiction.

We return once again to the problem of the three overt rulings of the National Labor Relations Board in the case at bar.

The federal courts are silent as to what rule to apply in such a situation.

 In Lockridge v. Amalgamated Ass'n of Street Electrical Railway & Motor Coach Employees, 84 Idaho 201, 369 P.2d 1006, 1010, the Idaho Supreme Court (in dealing with a somewhat different problem) found occasion to say:

> "In view of the unsettled state of the federal law, our course is clear. We must assert jurisdiction in every doubtful case, to the end that our citizens be not denied relief for wrongs 'neither protected nor prohibited' nor 'preempted' by federal law, or, more appropriately, by the National Labor Relations Board."

We echo those sentiments in relation to contradictory rulings by the National Labor Relations Board and its capacity for advisory opinion.

We affirm the decree here under review, but we wish to point out that this opinion has dealt with the question of jurisdiction solely—not the merits of the controversy.

Affirmed.

GOODWYN, COLEMAN and HARWOOD, JJ., concur.