The question presented on these appeals is whether the doctrine of federal preemption applies, specifically, whether federal law allowed a former husband to change the beneficiary on a Federal Employees' Group Life Insurance (FEGLI) policy, even though a state circuit court, in a divorce proceeding, had ordered him to maintain his former wife as the sole beneficiary.
The learned trial judge, in a lengthy judgment, determined that "the effect of a provision in a decree of divorce requiring a party to maintain a designated person as a beneficiary of life insurance create[d] a vested equitable interest in the proceeds of [the FEGLI policy] which [could not] be defeated by a later attempt to change the beneficiary." He also concluded that the insured had committed a fraud on his former wife by failing to advise her that he was going to change the beneficiary designation on the policy, and that as a result, a constructive trust should be imposed in her favor. He issued a summary judgment, finding that: "Under Alabama law it is clear that Betty Marie Potter is entitled to the proceeds of Jackie H. Potter's life insurance despite the attempt by him to change the designation of beneficiary." Metropolitan Life Insurance Company, the insurer, and Elizabeth Townsend and Gene A. Potter, two of the new beneficiaries the insured had named, appeal. Their sole claim is that federal statutes and regulations specifically applicable to the FEGLI policy preempt the state divorce decree and require the payment of the FEGLI proceeds to the designated beneficiaries. We agree with the appellants, and we reverse the judgment and remand the cause.
 FACTS
The facts are not in material dispute. Jackie Potts, the insured, was a retiree from the National Aeronautics and Space Administration (NASA) at the Marshall Space Flight Center in Huntsville. He was covered under a FEGLI policy issued by Metropolitan to the United States Office of Personnel Management. The FEGLI program was established by Congress to provide life insurance coverage to federal civilian employees, and it is governed by the provisions of the Federal Employees' Group Life Insurance Act of 1954 ("FEGLI Act"), 5 U.S.C. § 8701-8716 (1982 Supp. 1986), and by regulations of the Office of Personnel Management, 5 C.F.R. § 870.101 et seq. (1987).
The FEGLI Act provides, in relevant part:
 "The amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
 "First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or [in the case of a retiree] in the Office of Personnel Management. . . ."
5 U.S.C. § 8705(a).
 The regulations provide, in relevant part: "A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary. This right cannot be waived or restricted."
5 C.F.R. § 870.901(e).[1]
The FEGLI Act further provides:
 "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall *Page 591 supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions."
5 U.S.C. § 8709(d)(1). (Emphasis added).
The FEGLI policy provides for payment of proceeds according to the order of precedence mandated by 5 U.S.C. § 8705(a) and prescribes the procedures that must be followed in designating a beneficiary.
On April 25, 1984, Jackie Potter and Betty Marie Potter were divorced by a judgment of the Circuit Court of Madison County, Alabama. That judgment provided, inter alia:
 "It is further ORDERED, ADJUDGED AND DECREED that so long as the husband maintains the life policies presently in effect, he is hereby ordered to maintain the wife as sole beneficiary and shall not be allowed to change such beneficiary unless the wife shall die, remarry, or live openly or cohabit with a member of the opposite sex. . . ."
At the time of the divorce, the designated beneficiary of 100% of Jackie Potter's FEGLI insurance was Betty Marie Potter. In a duly executed designation of beneficiary form dated July 13, 1986, and received by the Office of Personnel Management on July 22, 1986, Jackie Potter revoked the designation of Betty Marie Potter as beneficiary of his FEGLI proceeds and named instead his son, Dwight Douglas Potter, his brother Gene Arnold Potter, and a friend, Elizabeth C. Townsend, as beneficiaries of 60%, 20%, and 20% shares, respectively. Jackie Potter did not tell his ex-wife Betty Marie Potter of the beneficiary change.
Jackie Potter died on February 16, 1987. Shortly thereafter, Metropolitan received claims for death benefits from the newly designated beneficiaries and from Betty Marie Potter. Metropolitan also received an assignment of benefits dated March 13, 1987, by Dwight Douglas Potter in favor of Betty Marie Potter, his mother.
On or about March 16, 1987, Betty Marie Potter and Dwight Douglas Potter commenced this action in the Circuit Court for Madison County, Alabama, seeking payment to Betty Marie Potter of the FEGLI proceeds payable upon Jackie Potter's death. No FEGLI proceeds have as yet been paid to any claimant, pending resolution of this action.
 I.
The authority of the United States is supreme on all subjects that the Constitution has committed to it, and since this case deals with an insurance policy issued pursuant to the FEGLI Act contained in 5 U.S.C. § 8701 et seq. and governed by administrative regulations issued pursuant to authority granted in that Act, federal power must prevail. Cf. Radio BroadcastTechnicians Local No. 1264 v. Jemcon Broadcasting Co., 281 Ala. 515, 205 So.2d 595 (1967).
According to the preemption doctrine, any time the law of Alabama is in conflict with federal law, or with the administration of a federal program, the federal law must take precedence. Fillinger v. Foster, 448 So.2d 321 (Ala. 1984). Preemption may occur from explicit preemptive language in a statute, from implied congressional intent, or where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. Tectonics, Inc., ofFlorida v. Castle Construction Co., 753 F.2d 957 (11th Cir. 1985). Congressional intent to supersede state law may be inferred either because: (1) federal law is so pervasive that Congress left no room for the states to supplement it; (2) the field the federal law touches is one where the federal interests are dominant; or (3) the object the federal law seeks to obtain and the character of the obligations imposed by it reveal a strong federal purpose. Id. at 961.
In Howard v. Uniroyal, Inc., 719 F.2d 1552 (11th Cir. 1983), a federal case arising from Alabama, the court recognized that "federal regulations have no less pre-emptive effect than federal statutes." Id. at 1556, quoting Fidelity FederalSavings *Page 592 Loan Ass'n v. De La Cuesta, 458 U.S. 141, 102 S.Ct. 3014,73 L.Ed.2d 664 (1982). The Court also recognized that "Congress' authority to supplant state law is no less because the state's power is exercised by the state judiciary through the common law rather than by the state legislature." Id. at 1557.
The general principles of the doctrine of preemption of state law by federal law have been stated by the United States Supreme Court in Fidelity Federal Savings Loan Ass'n v. De LaCuesta, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), as follows:
 "The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2 requires us to examine congressional intent. Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' Jones v. Rath Packing Co., 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977). Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947).
 "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 [83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248] (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress', Hines v. Davidowitz, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941)."
458 U.S. at 152-53, 102 S.Ct. at 3022-23 (emphasis added).See also, Silkwood v. Kerr-McGee Corp., 464 U.S. 238,104 S.Ct. 615, 78 L.Ed.2d 443 (1984).
Even when the conflicting state law is in the area of domestic relations,
 "[The United States Supreme Court] has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration or erosion of the congressional policy embodied in the federal rights. . . . While '[s]tate family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden,' Hisquierdo [v. Hisquierdo], 439 U.S. [572] at 581, 99 S.Ct. [802] at 808 [59 L.Ed.2d 1 (1979)] with references to United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1969) '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.' Free v. Bland, 369 U.S. [663 at] 666, 82 S.Ct. [1089] at 1092 [8 L.Ed.2d 180 (1962)]."
Ridgway v. Ridgway, 454 U.S. 46, 54-55, 102 S.Ct. 49, 54-55,70 L.Ed.2d 39 (1981). The Supreme Court has explicitly stated that a state law divorce judgment, "like any other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal enactments." Id. at 55, 102 S.Ct. at 55. For other cases involving federal preemption of state domestic relations law, see: McCune v. Essig, 199 U.S. 382,26 S.Ct. 78, 50 L.Ed. 237 (1905), Wissner v. Wissner,338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), Free v. Bland,369 U.S. 663, 82 S.Ct. 1089, *Page 593 8 L.Ed.2d 180 (1962), Yiatchos v. Yiatchos, 376 U.S. 306,84 S.Ct. 742, 11 L.Ed.2d 724 (1964), Hisquierdo v. Hisquierdo,439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), and McCarty v.McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).
Under the principles of federal preemption, the federal statutes and regulations governing FEGLI must preempt and supersede conflicting state law embodied in or arising from a divorce decree.
In the instant case, there is no dispute that the beneficiary designation form of July 13, 1986, completed by Jackie Potter and filed with the Office of Personnel Management, complied with the requirements of the FEGLI Act, the regulations, and the policy and was therefore a valid designation of beneficiary. Under the FEGLI regulations,5 C.F.R. § 870.901(e), Jackie Potter had the unrestrictable right to make this beneficiary change. There was no requirement, under the regulations, to notify the previous beneficiary or to obtain her consent. Indeed, the regulations affirmatively permit a change of beneficiary "at any time and without the knowledge or consent of the previous beneficiary" and prescribe that: "This right cannot be . . . restricted." 5 C.F.R. § 870.901(e). Upon Jackie Potter's death, pursuant to the FEGLI order of precedence, 5 U.S.C. § 8705(a), payment of the FEGLI proceeds must be made to the latest designated beneficiaries, namely Dwight Douglas Potter, Gene Arnold Potter, and Elizabeth Townsend.
The trial court was aware of the direction of the federal law governing distribution of FEGLI proceeds, but held that the distribution of the FEGLI proceeds should be controlled by the state court divorce judgment which ordered Jackie Potter to maintain his ex-wife Betty Marie Potter as beneficiary of existing life policies. The state law embodied in or arising from the divorce judgment that would give Betty Marie Potter an interest in the FEGLI proceeds superior to that of the newly designated beneficiaries directly conflicts with federal law. If the divorce judgment is deemed to control payment of the FEGLI proceeds, then it conflicts with the federal statutory order of precedence, 5 U.S.C. § 8705(a); with Jackie Potter's right to change beneficiaries without restriction under5 C.F.R. § 870.901(e); and with the express preemption provision of 5 U.S.C. § 8709(d)(1); and if it could be construed to control who will receive the FEGLI proceeds, then the court's judgment would effectively nullify Congress's choice that FEGLI requirements for designating a beneficiary must be strictly complied with. 5 U.S.C. § 8705(a). In each area of conflict between federal law and state law, it is federal law that must prevail, under the doctrine of federal preemption.
In a case virtually indistinguishable from the case at bar, except for the specific government life insurance program involved, the United States Supreme Court held that the provisions of the Servicemen's Group Life Insurance Act of 1965 ("SGLIA"), 38 U.S.C. § 765 et seq. (1982 Supp. 1985), prevail over inconsistent state law. Ridgway v. Ridgway, 454 U.S. 46,102 S.Ct. 49, 70 L.Ed.2d 39 (1981).
In Ridgway, Army Sergeant Ridgway and his first wife were granted a divorce by a Maine court. The divorce judgment ordered Ridgway to keep in force existing insurance policies on his life for the benefit of his three children. At the time of the divorce, Sgt. Ridgway's life was insured under a $20,000 policy issued by Prudential Life Insurance Company of America pursuant to SGLIA, and Ridgway's first wife, April, was the designated beneficiary. Ridgway remarried and changed the policy's beneficiary designation so that the proceeds would be payable as provided "by law." SGLIA establishes a specified "order of precedence," 38 U.S.C. § 770(a), under which life insurance proceeds are paid to the insured's widow or widower if there is no designated beneficiary. Thereafter, Sgt. Ridgway died, survived by his second wife, Donna. After April and Donna both filed claims for the policy proceeds, April instituted suit in a Maine superior court against Prudential, seeking to enjoin payment of the proceeds to Donna and to obtain a judgment declaring that the proceeds were payable to the children under *Page 594 
the divorce judgment. The Maine Supreme Court imposed a constructive trust on the proceeds for the benefit of the children. The United States Supreme Court reversed, holding that SGLIA and related regulations preempted the state court judgment and that payment of the proceeds must be made to the insured's widow, Donna, under SGLIA's "order of precedence."Ridgway v. Ridgway, 454 U.S. at 48-50, 59-60, 102 S.Ct. at 51-53, 57-58.
The Supreme Court's holding in Ridgway is dispositive of the case at bar. Ridgway cannot be distinguished just because it dealt with a different federal insurance program. The basic structure of SGLIA was patterned after the FEGLI Act, and the two acts are intended to be construed identically. See,Stribling v. United States, 419 F.2d 1350, 1353-54 (8th Cir. 1969). Both acts authorize the purchase of group policies from private insurance companies. Compare 5 U.S.C. § 8709 and 38 U.S.C. § 766. The designation-of-beneficiary provisions under the two acts are virtually identical. SGLIA § 770(a) provides for an order of precedence of payment of insurance proceeds "First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death. . . ." Compare FEGLI Act, 5 U.S.C. § 8705(a). The regulations pertaining to SGLIA provide that an insured "may designate any person, firm, corporation or legal entity" as beneficiary, 38 C.F.R. § 9.16(f), and that "[a] change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary." 38 C.F.R. § 9.16(e). Compare FEGLI regulations, 5 C.F.R. § 870.902(d) and (e). Given a similar factual situation and a statutory and regulatory scheme virtually identical to that in the case at bar, the Supreme Court concluded that the controlling provisions of SGLIA must "prevail over and displace inconsistent state law."Ridgway, 454 U.S. at 60, 102 S.Ct. at 57.
The provisions of the FEGLI Act and regulations indicate even more strongly that the state court judgment must yield to federal law in this case. The regulations pertaining to change of beneficiary contain the additional language stating that the insured's right to change the beneficiary designation at any time "cannot be waived or restricted." 5 C.F.R. § 870.901(e) (emphasis added).
Furthermore, unlike SGLIA, which was before the Court inRidgway, the FEGLI Act expressly mandates preemption, providing:
 "The provisions of any contract . . . which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, . . . to the extent that the law or regulation is inconsistent with the contractual provisions."
5 U.S.C. § 8709(d)(1). It is certainly appropriate for us to conclude, as the court stated in Ridgway, that "Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." Ridgway, 454 U.S. at 5556, 102 S.Ct. at 55-56, quoting Wissner v. Wissner,338 U.S. 655, 658, 70 S.Ct. 398, 399, 94 L.Ed. 424 (1950).
The Court in Ridgway indicated that the earlier case ofWissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398 (1950), which had held that the National Service Life Insurance Act of 1940, 38 U.S.C. § 801 et seq. (now 38 U.S.C. § 701 et seq.) preempted California community property law, was controlling.454 U.S. at 55, 102 S.Ct. at 55. In Wissner, the insured's widow attempted to assert her community property interest in one-half of the proceeds of the NSLIA policy, even though the insured had designated his mother as beneficiary. The Supreme Court found that California law was in direct conflict with the NSLIA, which gives the insured the right to designate a beneficiary and to change the beneficiary at any time. Wissner v. Wissner,338 U.S. at 658-59, 70 S.Ct. at 399-400. The court held that California's community property law was in conflict with the NSLIA provision because it "nullifies the soldier's choice and frustrates the deliberate purpose of Congress [that the proceeds be paid *Page 595 
to the named beneficiary]. It cannot stand." 338 U.S. at 659,70 S.Ct. at 400.
The precedent set by Ridgway v. Ridgway has been followed consistently in cases dealing specifically with the FEGLI Act. See, Metropolitan Life Insurance Co. v. McMorris, 786 F.2d 379
(10th Cir. 1986); Metropolitan Life Insurance Co. v. McShan,577 F. Supp. 165 (N.D.Cal. 1983); Knowles v. Metropolitan LifeInsurance Co., 514 F. Supp. 515 (N.D.Ga. 1981); McGovern v.Broadstreet, 720 P.2d 589 (Colo.Ct.App. 1985); and Estate ofHanley v. Andresen, 39 Wn. App. 377, 693 P.2d 198 (1984). The courts in all of these cases held that the FEGLI Act and regulations, giving the insured federal employee the right freely to designate a beneficiary, must preempt and supersede inconsistent provisions of a state court divorce judgment.
While the result we reach in this case may seem harsh, the language and intent of the congressional act and the regulations promulgated pursuant to the authority granted by the Act, are clear, and the result we reach is the same result other courts have reached when dealing with cases involving a FEGLI policy. The most recent case we have found is O'Neal v.Gonzalez, 839 F.2d 1437 (11th Cir. 1988). There, the insured had designated his aunt as the beneficiary under his FEGLI policy, but had also contractually agreed with a girl friend with whom he lived that he would name her as the beneficiary. The facts in O'Neal closely parallel those of this case. Because the facts of that case and the contentions of the parties in that case are so similar to the facts and the contentions of the parties in this case, we quote extensively from that opinion, which was authored by Chief Judge Roney:
 "The facts assumed to be true for summary judgment purposes present an appealing case for plaintiff Sharon O'Neal. She and Daniel Bazo, the insured deceased, were close friends for fourteen years and lived together for the last eight years prior to Bazo's death. They purchased a home in Miami, Florida as joint tenants with right of survivorship. Both were employed by the federal government and insured by Metropolitan Life Insurance Company under a policy provided through FEGLI. To ensure that upon the death of one, the other could continue to pay the mortgage on their house, they agreed to designate each other as beneficiaries of their respective FEGLIA policies in an amount in excess of the unpaid balance of the mortgage.
 "In 1981, O'Neal designated Bazo as beneficiary of all of her standard and additional life insurance coverage. Such a designation remained unchanged until his death.
 "In 1981, Bazo designated O'Neal as beneficiary of 75% of his additional life insurance coverage. Four years later, however, without informing O'Neal, Bazo executed another form reducing O'Neal's share to 10% and designating the defendant Constance Gonzalez, his aunt, as beneficiary of all of his standard life insurance and 90% of his additional coverage, leaving to plaintiff O'Neal only 10% of the additional insurance.
 "Both O'Neal and Gonzalez applied to receive Bazo's insurance proceeds upon his death. O'Neal instituted an action in the Florida Circuit Court for Dade County seeking to impose a constructive trust upon 75% of the proceeds. The insurance carrier, Metropolitan Life Insurance Co., was joined as a party defendant. The case was removed to federal court on the petition by Gonzalez. With the consent of all parties, the insurer paid out that portion of the money not subject to dispute and deposited the remainder into the registry of the court pending further court order.
 "On cross-motions for summary judgment, the court granted summary judgment in favor of Gonzalez. In response to a motion for clarification, the court held that O'Neal could not maintain an action for breach of contract.
 "O'Neal raises two issues on appeal: (1) whether an insured's change of designated beneficiary under a FEGLIA policy is valid when it violates a contractual agreement made by the insured to provide *Page 596 
payment of the policy in another manner; and (2) whether a constructive trust benefitting a non-designated person may be imposed upon proceeds of the FEGLIA policy once payment has been made to the designated beneficiary. For the purpose of summary judgment, the district court properly assumed the existence of a contract between O'Neal and Bazo and that Bazo had breached that agreement.
 "The federal statute establishing the FEGLIA insurance program provides that the insurance shall be paid to the beneficiary designated by the employee in a signed and witnessed writing received before death in the employing office and that for this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect. "5 U.S.C.A. § 8705(a).
 "The Office of Personnel Management promulgated regulations necessary to carry out the purposes of the act. Regulation 870.901 provides, in part, that
 "(e) A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary. This right cannot be waived or restricted.
"5 C.F.R. § 870.901 (1986).
 "O'Neal contends that the Act and regulations merely set forth a procedure for disbursing the proceeds while conferring no substantive right of payment upon the designated beneficiary. To view the provisions in any other way, O'Neal argues, would imply that Congress intended to allow a federal employee to use what is meant to be a federal rule of procedure to intentionally disregard a contractual obligation made to a previously designated beneficiary.
 "The federal courts have consistently held that the statute and regulations compel a decision contrary to plaintiff's position. See Huff v. Metropolitan Life Ins. Co., 675 F.2d 119 (6th Cir. 1982); Metropolitan Life Ins. Co. v. Manning, 568 F.2d 922 (2d Cir. 1977). In reaching its determination, the district court relied on two decisions from other districts.
 "In Metropolitan Life Insurance Co. v. McShan, 577 F. Supp. 165 (N.D.Cal. 1983), federal employee Ellis McShan, insured under FEGLIA, named his four children as beneficiaries. In a judgment entered in a marriage dissolution action, McShan was ordered to maintain all of his children as beneficiaries of his life insurance policy. Subsequently, McShan executed a second designation of beneficiary form, naming his second wife, Esther, as sole beneficiary. The children contended that the proceeds should be held in a constructive trust because the state court order was violated. The court in a comprehensive, well-reasoned decision, held that the substantive rights granted under FEGLIA and the regulations prevailed over and preempted state law to the contrary. "The other federal case which considered conflicting claims between state law and rights under FEGLIA is Knowles v. Metropolitan Life Insurance Co., 514 F. Supp. 515 (N.D.Ga. 1981). In that case, Helen Elizabeth Knowles sought to recover the proceeds of a FEGLIA policy on the life of her ex-husband, Arthur Bona Knowles. She based her claim on a divorce decree and settlement agreement which provided that she would remain her ex-husband's beneficiary under the insurance policies provided by the United States Postal Service. Four days after entry of the decree, Arthur changed the beneficiary to Mary Knowles, his present widow. Helen asserted that the provisions of the property settlement agreement not to change the beneficiary foreclosed the insured's right to do so even though the policy by its terms gave him this right. The court rejected this argument, quoting 5 C.F.R. § 870.901(e), and emphasized the language that 'this right cannot be waived or restricted.' The court stated that the regulation had the force and effect of law and '[t]he marriage settlement agreement thus cannot operate as a waiver or restriction of the insured's right to change this beneficiary. . . .' *Page 597 
 "O'Neal does not attempt to distinguish these cases, but rather points out the inequity of the results in McShan and Knowles as well as the inequity to O'Neal should this appeal be decided against her.
 "While the result may be harsh, the language and intent of the statute are clear. The statute was amended after the Ninth Circuit's decision in Sears v. Austin, 292 F.2d 690 (9th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 365, 7 L.Ed.2d 192
(1961), which held that a valid holographic will was effective to designate a beneficiary under a FEGLIA policy issued to one who had not previously designated a beneficiary. The Senate Report on the Amendment listed two reasons for the change: (1) administrative convenience; and (2) avoidance of serious delay in paying insurance benefits to survivors. The report also noted that the Amendment was intended to 'clarify Congress' intent [and] to state clearly that the order of precedence set out in that section shall prevail over any extraneous document designating a beneficiary. . . .' S.Rep. No. 1064, 89th Cong.2d Sess. reprinted in 1966 U.S. Code Cong. Admin. News 2070, 2071. This language indicates that Congress intended to establish, for reasons of administrative convenience and for the benefit of designated beneficiaries, an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case.
 "In addition to equitable considerations, O'Neal's analysis is grounded upon general principles of insurance and contract law; the nature of an insurance policy as a contract granting specific, severable property rights to its owner, and the rights and interest of a beneficiary prior to and upon the death of an insured. As the court noted in Knowles, however, 'the insurance policy in question is not a private contract between the insured and the insurer, but a federal policy administered under federal law.' Knowles, 514 F. Supp. at 516. As such, " 'It must be assumed that the federal provisions regarding designation of beneficiaries were intended to confer on the insured more than the right to do a meaningless act. If the proceeds are to go to someone other than the designated beneficiary the act of so designating serves no purpose.'
"McShan, 577 F. Supp. at 168.
 "The district court's further decision that federal law preempts state causes of action which would make the federal act meaningless, so that no constructive trust could be imposed on the proceeds in a breach of contract action, is a necessary consequence of the Congressional intent."
839 F.2d at 1440.
The trial judge in the present case was of the opinion thatYiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742,11 L.Ed.2d 724 (1964), and the state court case of Roberts v. Roberts,560 S.W.2d 438 (Tex.Civ.App. 1977), supported his judgment. We must disagree. In Metropolitan Life Ins. Co. v. McShan, 577 F. Supp. 165
(N.D.Calif. 1983), cited approvingly by Chief Judge Roney in O'Neal, Chief Judge Peckham discussed both the Yiatchos case and the Roberts case. He stated that "[a] number of factors indicate that Roberts was wrongly decided." He also opined thatRidgway, not Yiatchos, was controlling. McShan involved a factual situation strikingly similar to the one presented here. Chief Judge Peckham held that the FEGLI Act preempted a state court divorce order requiring an insured federal employee to maintain all his children as beneficiaries of his life policy and that the employee's second wife, whom he had subsequently named as beneficiary, was entitled to the proceeds of the policy when the employee died. As pointed out earlier, the Eleventh Circuit in O'Neal cited McShan with approval.
Other cases reaching similar results are: Adams v. Macy,314 F. Supp. 399 (D.Md. 1970) (designation-of-beneficiary form, which was witnessed by the beneficiary in violation of a federal regulation stating that a beneficiary could not act as witness *Page 598 
to the designation, was ineffective to change the beneficiary);Estate of Hanley v. Andresen, 39 Wn. App. 377, 693 P.2d 198
(1984) (literal compliance with FEGLIA and the regulations is necessary in designating a beneficiary); Metropolitan Life Ins.Co. v. Trainor, 754 P.2d 427 (Colo.App. 1988) (in an interpleader action filed by Metropolitan, the trial court found that the federal employee had intended to name his second wife as the beneficiary and ordered the benefits paid to her, but the appellate court reversed, holding that the insured's failure to designate his second wife as beneficiary left his former wife as beneficiary despite his intent, because under federal law, strict compliance with the law and regulations regarding change of beneficiary was mandatory).
In reaching the decision we reach in this case, we have considered the case of Lingle v. Norge Division of Magic Chef,Inc., ___ U.S. ___, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), which held that the petitioner's state tort remedy for retaliatory discharge was not preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. We are of the opinion that Lingle in no way changes or modifies the rule of law set out in Ridgway and applicable to this case.
Based on the foregoing, we hold that the judgment of the trial court is due to be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.
[1] 5 C.F.R. § 870.901(e) was redesignated as 870.902(e), effective 1/6/88.