Present:  All the Justices

JUDY A. MARETTA

                                    OPINION BY
v.  Record No. 102042    CHIEF JUSTICE CYNTHIA D. KINSER
                                   January 13, 2012
JACQUELINE HILLMAN

               FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Michael F. Devine, Judge

     Judy A. Maretta (Maretta), as the named beneficiary of a

Federal Employees' Group Life Insurance (FEGLI) policy, received

FEGLI benefits upon the death of her ex-husband.  The question

on appeal is whether federal law preempts Code § 20-111.1(D),

which otherwise would make Maretta liable to her ex-husband's

widow, Jacqueline Hillman (Hillman), for those benefits.

     In the event of a decree of annulment or divorce from the

bond of matrimony, Code § 20-111.1(A) revokes "any revocable

beneficiary designation contained in a then existing written

contract owned by one party that provides for the payment of any

death benefit to the other party."  However, Code § 20-111.1(D),

the subsection at issue, provides that

          [if Code § 20-111.1(A)] is preempted by federal
          law with respect to the payment of any death
          benefit, a former spouse who, not for value,
          receives the payment of any death benefit that
          the former spouse is not entitled to under this
          section is personally liable for the amount of
          the payment to the person who would have been
          entitled to it were this section not preempted.

     In contrast to these statutory provisions, the Federal

Employees' Group Life Insurance Act (FEGLIA), 5 U.S.C. § 8701 et

seq. (2006 & Supp. II 2008), contains an order of precedence

that directs to whom benefits under a FEGLI policy are paid:

> [T]he amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . . .
>
> Second, if there is no designated beneficiary, to the widow or widower of the employee.

5 U.S.C. § 8705(a). FEGLIA also contains a preemption

provision, which states:

> The provisions of any contract under this chapter [5 U.S.C. § 8701 et seq.] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1).[1]

---

[1] The "contractual provisions" referenced in 5 U.S.C. § 8709(d)(1) with which state law must be consistent are simply the provisions of FEGLIA. See O'Neal v. Gonzalez, 839 F.2d 1437, 1440 (11th Cir. 1988) (noting that the insurance policy is not a traditional contract between an insured and the insurer but a federal policy governed by federal law). Section 8709(d)(1) "broadly preempts any state law that is inconsistent with the FEGLIA master policy." Metropolitan Life Ins. Co. v. Christ, 979 F.2d 575, 579 (7th Cir. 1992).

2

Because Congress intended for FEGLI benefits to be paid and to belong to a designated beneficiary, we conclude that FEGLIA preempts Code § 20-111.1(D). Therefore, we will reverse the circuit court's judgment.

FACTS AND PROCEEDINGS

The relevant facts are not in dispute. In December 1996, Warren Hillman (Warren) named Maretta, his wife at the time, as the beneficiary of his FEGLI policy. The two divorced in December 1998 and Warren married Hillman in October 2002. Warren, however, never changed the beneficiary designation in his FEGLI policy. Hillman and Warren were still married when, in July 2008, Warren died. After her husband's death, Hillman filed a claim for benefits under Warren's FEGLI policy but was told the proceeds would be distributed to Warren's designated beneficiary, Maretta. Maretta filed a claim for and received the death benefits under the FEGLI policy in the amount of $124,558.03.

Hillman then filed an action against Maretta, claiming that pursuant to Code § 20-111.1(D), Maretta was liable to her for the death benefits received as the beneficiary of Warren's FEGLI policy. Hillman sought an order directing Maretta to pay those proceeds to Hillman or, alternatively, a judgment against Maretta in the amount received from the FEGLI policy. Maretta filed a demurrer and plea in bar. Citing numerous federal

3

cases, Maretta claimed that Code §§ 20-111.1(A) and -111.1(D) are preempted by 5 U.S.C. §§ 8705 and 8709 because the state statutes grant FEGLI benefits to someone other than the named beneficiary in violation of FEGLIA's terms. In a letter opinion, the circuit court overruled Maretta's demurrer and plea in bar, concluding that Code § 20-111.1(D) is not preempted by FEGLIA. Hillman then moved for summary judgment. Finding no material facts in dispute, the circuit court granted Hillman's motion and entered judgment against Maretta in the amount of $124,558.03.

We granted Maretta this appeal. The sole issue is whether the circuit court erred in determining that Hillman's claim under Code § 20-111.1(D) is not preempted by FEGLIA. That issue is a question of law reviewed de novo on appeal. See Johnson v. Hart, 279 Va. 617, 623, 692 S.E.2d 239, 242 (2010).

ANALYSIS

The Supremacy Clause in the United States Constitution provides that the laws of the United States "shall be the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. Accordingly, state laws in conflict with federal law are "without effect." Altria Group, Inc. v. Good, 555 U.S. 70, 76 (2008) (internal quotation marks omitted). The preemption doctrine "has its roots" in the Supremacy Clause and "requires us to examine congressional intent." Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152 (1982). " '[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case." Altria Group, 555 U.S. at 76 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).

"Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." de la Cuesta, 458 U.S. at 152-53 (internal quotation marks omitted). Even when Congress has stopped short of totally displacing state law in a specific area, state law is nevertheless preempted "to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

5

Id. at 153 (citations and internal quotation marks omitted); see also, Dugan v. Childers, 261 Va. 3, 8, 539 S.E.2d 723, 725 (2001) (" 'The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition.' ") (quoting Hisquierdo v. Hisquierdo, 439 U.S. 572, 583 (1979)); Metropolitan Life Ins. Co. v. Potter, 533 So.2d 589, 591 (Ala. 1988) ("Preemption may occur from explicit preemptive language in a statute, from implied congressional intent, or where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress."). While there is a presumption against preemption "in areas of traditional state regulation such as family law," Egelhoff v. Egelhoff, 532 U.S. 141, 151 (2001), "[the] relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." Ridgway v. Ridgway, 454 U.S. 46, 54 (1981) (internal quotation marks omitted).

In addition to the order of precedence set forth in 5 U.S.C. § 8705(a) and the preemption provision in 5 U.S.C. § 8709(d)(1), FEGLIA and the regulations promulgated thereunder contain provisions relevant to the specific preemption question before us. Pursuant to 5 C.F.R. § 870.802(f), an insured under

a FEGLI policy can change his or her beneficiary "at any time without the knowledge or consent of the previous beneficiary. This right cannot be waived or restricted."[2] Id. The insured's beneficiary designation takes precedence over any court order for divorce, annulment, or separation unless that order has been received by the appropriate office prior to the insured's death. 5 U.S.C. § 8705(e); 5 C.F.R. § 870.801(d). In addition, any "designation, change, or cancellation of beneficiary in a will or any other document not witnessed and filed as required by [5 C.F.R. § 870.802] has no legal effect with respect to [FEGLI] benefits." 5 C.F.R § 870.802(c).

Contrary to these provisions, Code § 20-111.1(A) revokes a beneficiary designation upon entry of a decree of annulment or divorce from the bond of matrimony and thus alters the order of precedence in 5 U.S.C. § 8705(a), which directs payment of FEGLI benefits first to the designated beneficiary regardless of marital status. As the parties acknowledged before the circuit court, FEGLIA preempts Code § 20-111.1(A). See Metropolitan Life Ins. Co. v. Bell, 924 F. Supp. 63, 65 (E.D. Tex. 1995) (holding that 5 U.S.C. § 8709(d)(1) "certainly preempts any direct payment to anyone other than a listed beneficiary when a beneficiary is actually designated").

_____

[2] "Federal regulations have no less pre-emptive effect than federal statutes." de la Cuesta, 458 U.S. at 153.

7

Unlike Code § 20-111.1(A), Code § 20-111.1(D) does not alter the direct payment of FEGLI benefits to a designated beneficiary. Instead, it grants a third party the right to recover those benefits from a designated beneficiary who is the former spouse of the insured. Code § 20-111.1(D). If Congress intended for FEGLI benefits to belong to the designated beneficiary to the exclusion of all others, then Code § 20-111.1(D) "stands as an obstacle to the accomplishment and execution of the full power and objectives of Congress" and is therefore preempted by FEGLIA. de la Cuesta, 458 U.S. at 153.

Hillman argues, and courts have generally agreed, that FEGLIA manifests a congressional intent for administrative convenience. See, e.g., Kidd v. Pritzel, 821 S.W.2d 566, 569-70 (Mo. Ct. App. 1991) (holding that purpose of 5 U.S.C. § 8705 is "to provide for the speedy and economical settlement of claims") (citing cases); cf. Egelhoff, 532 U.S. at 148 (stating that the principal goal of Employee Retirement Income Security Act is to provide "a set of standard procedures to guide processing of claims and disbursement of benefits") (internal quotation marks omitted). But many courts have concluded that Congress also intended to grant an insured the right to name without restriction, and to the exclusion of all others, the person who will receive the benefits from a FEGLI policy. See, e.g., Metropolitan Life Ins. Co. v. Zaldivar, 413 F.3d 119, 120-21

8

(1st Cir. 2005) (FEGLIA preempts the imposition of a constructive trust on FEGLI proceeds once paid); Metropolitan Life Ins. Co. v. Christ, 979 F.2d 575, 578-79 (7th Cir. 1992) (same); O'Neal v. Gonzalez, 839 F.2d 1437, 1440 (11th Cir. 1988) ("Congress intended to establish . . . for the benefit of designated beneficiaries, an inflexible rule that the beneficiary . . . would receive the policy proceeds, regardless of other documents or the equities in a particular case."). Most relevant is the decision of the Supreme Court of the United States in Ridgway. Although Ridgway involved the Servicemen's Group Life Insurance Act (SGLIA), both FEGLIA and SGLIA contain identical "order of precedence" provisions. Compare 5 U.S.C. § 8705(a) with 38 U.S.C. § 1970(a). Regulations promulgated pursuant to SGLIA are also similar to those under FEGLIA. See 38 C.F.R. § 9.4(3)(b) (change in beneficiary may be made at any time). We thus agree with those courts that have considered Ridgway to be "highly persuasive, if not binding, in construing [FEGLIA]." See Zaldivar, 413 F.3d at 120 (citing cases in support).

In Ridgway, the insured serviceman named his wife as the beneficiary of his SGLIA benefits. 454 U.S. at 48. When the parties subsequently obtained a divorce, the state-law judgment ordered the insured to keep in force any existing life insurance policies for the benefit of his children. Id. The insured

9

remarried and, contrary to the command of the divorce order, changed the policy's beneficiary designation so that the proceeds would be paid pursuant to the statutory order of precedence set forth in 38 U.S.C. § 770(a), i.e., to his widow. Id. Both the widow and ex-wife, the latter on behalf of the insured's children, filed claims for the SGLIA policy proceeds. Id. at 49. The ex-wife also filed suit, asking that a constructive trust be placed on any proceeds paid to the widow. Id. The Supreme Judicial Court of Maine concluded that the widow should be named as the constructive trustee of the policy benefits and directed that the benefits be paid to the ex-wife on behalf of the insured's children. Id. at 50 (citing Ridgway v. Prudential Ins. Co. of America, 419 A.2d 1030, 1035 (Me. 1980)).

On a writ of certiorari, the Supreme Court first described the history and terms of SGLIA, including its specified order of precedence for paying benefits, 38 U.S.C. § 770(a), and its anti-attachment provision. Id. at 52-53. The latter shielded policy payments from creditors' claims and from "'attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.' " Id. (quoting 38 U.S.C. § 770(g)). Noting that "a state divorce decree, like other law governing the economic aspects of domestic relations, must give way to clearly conflicting federal

10

enactments," the Court then turned to its previous decision in Wissner v. Wissner, 338 U.S. 655 (1950). Ridgway, 454 U.S. at 55.

In Wissner, the trial court held that benefits paid under the National Service Life Insurance Act (NSLIA), which allowed an insured to designate and change a beneficiary and contained an anti-attachment provision, were community property. Wissner, 338 U.S. at 658-59. Although the insured service member named his parents as beneficiaries of his NSLIA policy, the trial court nevertheless directed that proceeds be paid to the insured's widow. Id. at 657-58. The Supreme Court in Wissner reversed, finding that the trial court's judgment "nullifie[d] the soldier's choice and frustrate[d] the deliberate purpose of Congress." Id. at 659.

Quoting that language from Wissner, the majority in Ridgway then held:

> The present case, we feel, is controlled by
> Wissner. [J]ust as . . . in Wissner, the insured
> service member possesses the right freely to
> designate the beneficiary and to alter that
> choice at any time by communicating the decision
> in writing to the proper office. Here, as there,
> it appropriately may be said: "Congress has
> spoken with force and clarity in directing that
> the proceeds belong to the named beneficiary and
> no other."

Ridgway, 454 U.S. at 55-56 (quoting Wissner, 338 U.S. at 658). Finding that a state law imposing a constructive trust on SGLIA benefits was preempted by SGLIA, the Court explained: "Federal

11

law and federal regulations bestow upon the service member an absolute right to designate the policy beneficiary. That right is personal to the member alone. [O]nly [the insured] had the power to create and change a beneficiary interest in his SGLIA insurance." Id. at 59-60.

Under a separate heading, the Supreme Court then held that placing a constructive trust on the policy proceeds was also inconsistent with SGLIA's anti-attachment provision. Id. at 60-62. Notably, the Court pointed out that it had similarly invoked NSLIA's identical anti-attachment provision as an independent ground for the result reached in Wissner. Id. at 60.

In light of the virtually identical language used in FEGLIA and SGLIA, we conclude pursuant to Ridgway that it is Congress' intent that "only [the insured] [has] the power to create and change a beneficiary interest," that the right to do so cannot be waived or restricted, and that the FEGLI benefits belong to the named beneficiary. Ridgway, 454 U.S. at 60; see Christ, 979 F.2d at 579 (state's divorce decree and constructive trust conflicted with the rights of the insured specified under FEGLIA). Just as with SGLIA, "Congress has spoken with force and clarity in directing that the [FEGLI] proceeds belong to the

12

named beneficiary and no other."[3]  See id. at 56 (emphasis added).  That is, Congress did not intend merely for the named beneficiary in a FEGLI policy to receive the proceeds, only then to have them subject to recovery by a third party under state law.  Simply put, "no persons other than [the beneficiary] have an interest in the policy benefits pursuant to FEGLIA."  Metropolitan Life Ins. Co. v. Armstrong-Lofton, 19 F.Supp.2d 1134, 1137 (C.D. Cal. 1998); see also O'Neal, 839 F.2d at 1440 (Congress' intent under FEGLIA was to establish an "inflexible rule" that only the beneficiary would receive the policy proceeds, "regardless of other documents or the equities in a particular case.").  Code § 20-111.1(D), by making liable "a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under" Code § 20-111.1(A), "create[s] a beneficiary interest" in the policy proceeds for someone other than the named insured.  Ridgway, 454 U.S. at 60.  In other words, Code § 20-111.1(D) "nullifies the [insured's] choice and frustrates the deliberate purpose of Congress."  Wissner, 338 U.S. at 659.  Thus, Code

---

[3] In fact, Congress' preemptive intent is more apparent in FEGLIA than in SGLIA, which contains no provision similar to 5 U.S.C. § 8709(d)(1).  See Potter, 533 So.2d at 594 (holding that given FEGLIA's express preemption provision, it is even more appropriate to conclude that Congress "'has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other'") (quoting Ridgway, 454 U.S. at 55-56).

13

§ 20-111.1(D) "actually conflicts with federal law [by]
stand[ing] as an obstacle to the accomplishment and execution of
the full purposes and objectives of Congress." de la Cuesta,
458 U.S. at 153 (internal quotation marks omitted). Therefore,
we hold that Code § 20-111.1(D) is preempted by FEGLIA.

We are aware, as Hillman argues on brief, that our decision
today stands in contrast to a majority of state court decisions.
Unlike federal courts, state courts have generally held that
FEGLIA does not preempt a state-law constructive trust on FEGLI
proceeds for the benefit of someone other than the named
beneficiary. See generally McCord v. Spradling, 830 So.2d 1188,
1202 (Miss. 2002) (citing cases and finding persuasive state
court holdings that the "distinction between beneficiary status
and ultimate equitable entitlement obviates any issue of federal
preemption of state-court action"); Fagan v. Chaisson, 179
S.W.3d 35, 42 (Ct. App. Tex. 2005) (citing cases); but see,
Potter, 533 So.2d at 593 (holding that FEGLIA preempted state
court divorce judgment ordering insured to maintain ex-wife as
beneficiary of existing life insurance policies). In doing so,
however, these courts have misconstrued Ridgway, specifically
its reliance on Wissner, and the separate, independent
discussion of SGLIA's anti-attachment provision. See Christ,
979 F.2d at 581 ("SGLIA's anti-attachment provision . . . was a
separate ground" for finding preemption); Metropolitan Life Ins.

14

Co. v. McShan, 577 F. Supp. 165, 169 (N.D. Cal. 1983) ("In both Wissner and Ridgway the existence of an anti-attachment provision was an independent basis upon which the Supreme Court found preemption."). In Fagan, for example, the court stated that "Ridgway was decided on two points," the first being that SGLIA's order of precedence for the payment of benefits merely conferred a right on the insured to designate a beneficiary. 179 S.W.3d at 44; see also Kidd, 821 S.W.2d at 570 (same). That interpretation is incorrect. The Court's first holding in Ridgway, made in reliance on its decision in Wissner, emphasized that the insured's right to designate a beneficiary and to alter that choice at any time evinced Congress' intent for the policy proceeds to "belong to the named beneficiary and no other."[4] Ridgway, 454 U.S. at 56 (internal quotation marks omitted). Hillman, and the courts on which she relies, fail to account for Ridgway's reliance on Wissner. According to the Supreme Court, Wissner controlled the outcome in Ridgway, id. at 55, and we conclude that Ridgway, in turn, controls the result in the case now before us.

State courts distinguishing Ridgway also fail to acknowledge what is apparent from a plain reading of the decision, i.e., that its holding based on SGLIA's anti-

---

[4] The court in Fagan also mistakenly referred to the second holding in Ridgway based on SGLIA's anti-attachment provision as the "most important[]." Fagan, 179 S.W.2d at 44.

15

attachment provision was a separate, independent basis for the result.  See, e.g., McCord, 830 So.2d at 1197 (distinguishing Ridgway solely on the grounds that SGLIA contained an anti-attachment provision).  Ridgway's discussion of SGLIA's anti-attachment provision began with the statement: the "imposition of a constructive trust is also inconsistent with the anti-attachment provision."  Ridgway, 454 U.S. at 60 (emphasis added).  In other words, Ridgway is not distinguishable on the basis that FEGLIA does not contain an anti-attachment provision.

In sum, the circuit court erred in concluding that Code § 20-111.1(D) is not preempted by FEGLIA.

CONCLUSION

For these reasons, we will reverse the judgment of the circuit court.  Because we conclude that FEGLIA preempts Code § 20-111.1(D), we will enter judgment for Maretta.

Reversed and final judgment.

JUSTICE McCLANAHAN, with whom JUSTICE MILLETTE joins, dissenting.

I.

The constitutional standard governing preemption under the Supremacy Clause, as contained in Article VI of the Constitution of the United States, presents a "'high threshold'" for the invalidation of a state statute alleged to conflict with federal

16

law.  Chamber of Commerce of the U.S. v. Whiting, 563 U.S. ___, ___, 131 S.Ct. 1968, 1985 (2011) (quoting Gade v. National Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 110 (1992) (Kennedy, J., concurring in part and concurring in judgment)).  Accordingly, courts are to address preemption claims "with the starting presumption that Congress does not intend to supplant state law."  New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995).  The threshold for invoking preemption is even higher where, as here, the state statute at issue represents a state legislature's exercise of its police power in the area of domestic relations.  Rose v. Rose, 481 U.S. 619, 625 (1987); Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979); United States v. Yazell, 382 U.S. 341, 352 (1966).  That is because " 'the whole subject of domestic relations . . . belongs to the laws of the States and not to the laws of the United States.' "  Rose, 481 U.S. at 625 (quoting In re Burrus, 136 U.S. 586, 593-94 (1890)).

Thus, as the United States Supreme Court has stated, " 'when state family law has come into conflict with a federal statute,' " courts should limit their Supremacy Clause review to a determination of " 'whether Congress has "positively required by direct enactment" that state law be pre-empted.' "  Id. (quoting Hisquierdo, 439 U.S. at 581 (quoting Wetmore v. Markoe, 196 U.S. 68, 77 (1904))).  Indeed, "[b]efore a state law

17

governing domestic relations will be overridden," the Supreme Court has further explained, the state law " '<u>must do "major damage" to "clear and substantial" federal interests</u>.' " <u>Id.</u> (quoting <u>Hisquierdo</u>, 439 U.S. at 581 (quoting <u>Yazell</u>, 382 U.S. at 352)) (emphasis added).[1]

In my opinion, this high threshold for imposing preemption in the instant case has not been met. That is, I do not believe Code § 20-111.1(D) (triggered, itself, upon federal preemption of subsection A of the statute) is preempted by the Federal Employees' Group Life Insurance Act (FEGLIA), 5 U.S.C. § 8701 et seq. (2006 & Supp. II 2008).

## II.

Subsection A of Code § 20-111.1 provides, in relevant part: "Upon the entry of a decree of annulment or divorce from the bond of matrimony . . . any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked. A death benefit prevented from

---

[1] <u>See</u> <u>Brandon v. Travelers Insur. Co.</u>, 18 F.3d 1321, 1326 (5th Cir. 1994) (observing in preemption case that "[f]ederal respect for state domestic relations law has a long and venerable history" and that "[w]hen courts face a potential conflict between state domestic relations law and federal law, the <u>strong presumption</u> is that state law should be given precedence" because "family relations [law] has been a sacrosanct enclave" (emphasis added)).

passing to a former spouse by this section shall be paid as if the former spouse had predeceased the decedent. . . ."[2]

In revoking the beneficiary designation of a former spouse to a life insurance policy upon divorce, Code § 20-111.1(A) operates as a companion to the revocation-by-divorce statute in Virginia applicable to wills of former spouses, Code § 64.1-59.[3] Addressing the latter statute, this Court has explained that its passage was "a statutory declaration of public policy concerning wills of divorced testators, which provided . . . that a divorced spouse is to be denied any benefits under a will executed prior to divorce" based on the testator's presumed change of intent upon divorce. Papen v. Papen, 216 Va. 879, 882-83, 224 S.E.2d 153, 155 (1976). "The General Assembly, in evaluating the advisability of [enacting Code § 64.1-59], undoubtedly concluded that the number of forgetful testators who would be benefited by the statute far exceeded the number of careful testators who might be inconvenienced by its enactment."

_____

[2] The terms of Code § 20-111.1(A) are expressly inapplicable "(i) to the extent a decree of annulment or divorce from the bond of matrimony, or a written agreement of the parties provides for a contrary result as to specific death benefits, or (ii) to any trust or any death benefit payable to or under any trust," none of which is presented in this case. Code § 20-111.1(C).

[3] Code § 64.1-59 provides, in relevant part: "If, after making a will, the testator is divorced a vinculo matrimonii or his marriage is annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse. . . ."

19

Id. at 883, 224 S.E.2d at 155-56.  The General Assembly no doubt adhered to a similar conclusion in subsequently enacting Code § 20-111.1(A) with its analogous revocation of a designation of a former spouse as a beneficiary on a life insurance policy upon divorce.  See generally Alan S. Wilmit, Note, Applying the Doctrine of Revocation by Divorce to Life Insurance Policies, 73 Cornell L. Rev. 653 (1988).

As appellant correctly asserts, however, Code § 20-111.1(A), as applicable to the facts in this case, is inconsistent with FEGLIA's directive as to whom life insurance benefits under a FEGLIA policy "shall be paid," as set forth in 5 U.S.C. § 8705(a).  Under the 5 U.S.C. § 8705(a) statutory "order of precedence," the first payee of the life insurance is "the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office . . . ."[4]  Id.  Consequently, in this case, pursuant to 5 U.S.C. § 8705(a), the FEGLI policy holder's former spouse, appellant, as the designated beneficiary on the policy, received payment of the insurance proceeds through the federal Office of Personnel Management (the federal agency that administers FEGLIA).  Under Code § 20-111.1(A), the policy

---

[4] Several other alternative payees are then listed under 5 U.S.C. § 8705(a) in order of priority in the event there is no designated beneficiary, the first of these being the widow or widower of the deceased policy holder.

20

holder's widow, appellee, would have received the insurance proceeds from her deceased husband's FEGLI policy.

Addressing such conflicts with state law, FEGLIA provides under 5 U.S.C. § 8709(d)(1) that "[t]he provisions of any contract under this chapter [5 USCS §§ 8701 et seq.] which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions."

The majority thus concludes, and I agree, that Code § 20-111.1(A) is therefore preempted under the express terms of 5 U.S.C. § 8709(d)(1), as Code § 20-111.1(A) would otherwise negate the payment dictated by 5 U.S.C. § 8705(a) where, as here, the designated beneficiary was a former spouse, and the designation was made prior to the divorce of the former spouse and the federal employee policy holder.

## III.

The issue on appeal is thus whether Code § 20-111.1(D), which is triggered upon the federal preemption of subsection A of the statute, is itself preempted under FEGLIA.

The General Assembly amended Code § 20-111.1 in 2007 by adding subsection D to the statute, which provides as follows:

21

"If this section is preempted by federal law with respect to the payment of any death benefit, a former spouse who, not for value, receives the payment of any death benefit that the former spouse is not entitled to under this section is personally liable for the amount of the payment to the person who would have been entitled to it were this section not preempted." See 2007 Acts ch. 306.

Passage of this amendment no doubt reflects the General Assembly's recognition that subsection A of Code § 20-111.1 was preempted by FEGLIA pursuant to 5 U.S.C. § 8709(d)(1). The General Assembly dealt with this impediment to implementation of its public policy embodied in subsection A's revocation-by-divorce provision for life insurance policies by establishing, in subsection D of Code § 20-111.1, an equitable remedy in favor of a third party who otherwise would have been entitled to receive the insurance proceeds pursuant to subsection A –- in this case, the decedent's widow. Under the new provision, the former spouse, as the designated beneficiary, is made personally liable to the third party for an amount equal to the insurance proceeds paid to the former spouse upon the death of the federal employee policy holder.

Thus, as the majority acknowledges, unlike subsection A, subsection D "does not alter the direct payment of FEGLI benefits to a designated beneficiary" in establishing the

equitable remedy against the former spouse.  After assessing

this key factor against the limited federal interest implicated

under 5 U.S.C. § 8705(a)'s payment provision for FEGLI benefits,

I believe that Code § 20-111.1(D) does no "major damage" to that

federal interest.  Rose, 481 U.S. at 625 (citations and internal

quotation marks omitted).

Viewed through the prism of our governing standard of

review, FEGLIA simply does not evince congressional intent to

shield a former spouse from liability against a third party

claim involving FEGLI proceeds that have already been paid to

the former spouse.  Rather, as the majority also acknowledges, 5

U.S.C. § 8705(a)'s "order of precedence" for the payment of

FEGLI benefits was enacted for the purpose of providing

"administrative convenience" for the federal Office of Personnel

Management (OPM) and the insurer in processing claims and

distributing benefits.  See Kidd v. Pritzel, 821 S.W.2d 566,

568-70 (Mo. Ct. App. 1991) (detailing the legislative history of

5 U.S.C. § 8705 and cited by the majority).  Addressing this

point, the Missouri Court of Appeals in Kidd aptly explains that

> [section] 8705 serves a valuable and worthwhile
> purpose by keeping the OPM and the insurance company
> out of legal entanglements.  It fulfills the
> congressional intention by reducing their
> administrative and legal hassles. Regardless of what
> claims are brought to recover the proceeds once they
> are paid out to the designated beneficiary, the
> purpose of § 8705 has been served.  Neither the
> insurance carrier nor the government can be burdened

23

by participation in a state judicial proceeding to recover the proceeds.

Id. at 572 (emphasis added). And this administrative convenience – the ability of the OPM and the insurer to simply pay the life insurance proceeds to the named beneficiary as directed by 5 U.S.C. § 8705, close the file, and move on to the next claim, as they did in this case – remains completely intact with the application of Code § 20-111.1(D). Accordingly, FEGLIA should not be held to preempt Code § 20-111.1(D).

I thus agree with the majority of state courts in other jurisdictions that have addressed the issue of preemption under FEGLIA and have similarly concluded that their state domestic relations laws, in creating an equitable claim for an amount equal to the FEGLI insurance proceeds that have been paid to the named beneficiary, are not preempted by FEGLIA. See, e.g., Fagan v. Chaisson, 179 S.W.3d 35, 42 (Tex. App. 2005); McCord v. Spradling, 830 So.2d 1188, 1203 (Miss. 2002); Sedarous v. Sedarous, 666 A.2d 1362, 1363 (N.J. Super. Ct. App. Div. 1995); Eonda v. Affinito, 629 A.2d 119, 123 (Pa. Super. Ct. 1993); Kidd, 821 S.W.2d at 575; In re Estate of Anderson, 552 N.E.2d 429, 434-35 (Ill. App. Ct. 1990); Roberts v. Roberts, 560 S.W.2d 438, 439-40 (Tex. App. 1977).

Unlike my colleagues, my view of congressional intent reflected in FEGLIA is not altered by Ridgway v. Ridgway, 454

U.S. 46 (1981), or Wissner v. Wissner, 338 U.S. 655 (1950) (the case that the United States Supreme Court relied upon in deciding Ridgway), where the Court imposed post-payment protection for the life insurance proceeds paid to the respective armed services member's designated beneficiary in each of those cases. I believe Ridgway, a Servicemen's Group Life Insurance Act (SGLIA) case, and Wissner, a National Service Life Insurance Act (NSLIA) case, are distinguishable from the instant FEGLIA case.

NSLIA, as the predecessor to SGLIA, placed into effect a system of life insurance benefits specifically designed for our armed services members shortly before the beginning of World War II. It then lapsed at the end of the Korean War, when private commercial insurance generally became available for service members. Ridgway, 454 U.S. at 50-51. SGLIA was subsequently enacted in response to private carriers' restrictions on coverage for service members as a result of the escalating Vietnam conflict. Id. at 50. Like federal employees under FEGLIA, armed services members possessed the right under both NSLIA and SGLIA to designate the beneficiaries of their choice. Id. at 55-56. Both NSLIA and SGLIA, however, contained an identical anti-attachment provision that was not included in FEGLIA. Id. at 60. Under the anti-attachment provision, "[p]ayments to the named beneficiary 'shall be exempt from the

claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, <u>either before or after receipt by the beneficiary</u> . . . .' " <u>Wissner</u>, 338 U.S. at 659 (quoting 38 U.S.C. § 816) (emphasis added).

Assessing the beneficiary designation and anti-attachment provisions together, the Supreme Court in <u>Ridgway</u> explained: " 'Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman.  The <u>exemption provision is his guarantee</u> of the complete and full performance of the contract <u>to the exclusion of conflicting claims</u>.  The end is a legitimate one within the <u>congressional powers over national defense</u>, and the means are adapted to the chosen end.' " <u>Ridgway</u>, 454 U.S. at 56-57 (quoting <u>Wissner</u>, 338 U.S. at 660-61 (emphasis added)).  The Supreme Court then concluded its analysis by explaining that, with the anti-attachment clause, "Congress has insulated the proceeds of SGLIA insurance from attack or seizure by any claimant other than the beneficiary designated by the insured or the one first in line under the statutory order of precedence. That is Congress' choice. It remains effective until legislation providing otherwise is enacted."  <u>Id.</u> at 63.

FEGLIA, by contrast, simply made group life insurance available to federal employees so as to " 'appl[y] to Government

26

service the best practices of progressive, private employers.' " <u>Fagan</u>, 179 S.W.3d at 45 (quoting <u>Kidd</u>, 821 S.W.2d at 568; some internal quotation marks omitted).  Manifestly, its passage was "not attended by the exigenc[ies] that motivated" Congress when passing NSLIA and SGLIA in the context of national defense.  <u>Id.</u> The omission of an anti-attachment clause in FEGLIA should thus be viewed as answering in the negative the question of whether Congress intended to preempt a state law like Code § 20-111.1(D) – one that impacts FEGLI benefits, if at all, only after the benefits have been paid to the designated beneficiary.  With a comprehensive statutory scheme like FEGLIA, such an "omission[]" is a "significant one[]."  <u>Mackey v. Lanier Collection Agency & Serv., Inc.</u>, 486 U.S. 825, 837 (1988) (addressing absence of anti-alienation provisions under ERISA as to welfare benefit plans).  As the Texas Court of Appeals stated in an analogous FEGLIA case, " '[i]f Congress had desired to totally pre-empt all state law claims[,] it would have included an anti-attachment provision [in] FEGLIA.  <u>Ridgway</u> expressly stated that if Congress chose to avoid the result in that case, it could do so by enacting legislation which did not include an anti-attachment provision. That is precisely what Congress did when it enacted FEGLIA.' "  <u>Fagan</u>, 179 S.W.3d at 45 (quoting <u>Kidd</u>, 821 S.W.2d at 571); <u>see</u> <u>Sedarous</u>, 666 A.2d at 1367 ("[I]f Congress had intended the same immunity of proceeds from state

27

court action in FEGLIA as it provided for in SGLIA, it could easily have done so by the simple expedient of including SGLIA's anti-attachment provision in FEGLIA.").

I also find support for my position in both federal and state court decisions addressing preemption under the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., a statutory scheme more analogous to FEGLIA than either NSLIA or SGLIA.

Like FEGLIA's "order of precedence" under 5 U.S.C. § 8705(a) dictating payment of the insurance proceeds to the designated beneficiary, ERISA requires payment of life insurance benefits provided under an ERISA employee welfare benefit plan to the designated beneficiary. Central States Se. & Sw. Areas Pension Fund, Inc. v. Howell, 227 F.3d 672, 677 (6th Cir. 2000); see Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300 (2009) (holding that the plan administrator must distribute benefits according to the plan documents pursuant to 29 U.S.C. § 1104(a)(1)(D), in order to satisfy ERISA's goal of establishing efficiency in benefit administration). Also like FEGLIA, ERISA expressly preempts "all State laws" that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). And, like FEGLIA, ERISA contains no anti-attachment or anti-alienation provision as to welfare benefit plans, which are the plans under ERISA that govern life insurance benefits. See Mackey, 486 U.S. at

28

836-37.  Furthermore, while ERISA does contain an anti-alienation provision for pension plans under 29 U.S.C. § 1056(d)(1), this provision simply requires each pension plan to "provide that benefits provided under the plan may not be assigned or alienated."  As such, section 1056(d)(1) is much more limited in scope than the anti-attachment provision contained in both NSLIA and SGLIA (which, again, is absent from FEGLIA).

Addressing this statutory framework under ERISA, the Sixth Circuit held in Central States that ERISA did not preempt the imposition of a constructive trust, under state law, on the life insurance benefits provided under an ERISA employee welfare benefit plan once those benefits had been distributed to the designated beneficiary according to the plan documents.  Central States, 227 F.3d at 678-79.  More specifically, as the Sixth Circuit explained:

> In this case, [appellee] seeks to impose a
> constructive trust on [her former husband's] ERISA
> welfare benefit plan benefits.  [He] changed the
> beneficiary designation in accordance with the plan
> documents [thereby removing appellee as the
> beneficiary]. On this issue, our precedents are clear
> – the beneficiary card controls the person to whom the
> plan administrator must pay the benefits.  However, we
> hold today that once the benefits have been released
> to the properly designated beneficiary, the district
> court has the discretion to impose a constructive
> trust upon those benefits in accordance with
> applicable state law if equity so requires.

Id. at 679.

29

The Supreme Court of Michigan reached the same conclusion in Sweebe v. Sweebe, 712 N.W.2d 708 (Mich. 2006). There, the appellant/former wife and the decedent/former husband entered into an agreement at the time of their divorce giving up any interest in any insurance policy of the other. The decedent had a life insurance policy governed by ERISA on which he had designated appellant as the beneficiary several years before their divorce, and never changed the designation after the divorce. Id. at 710. Appellee, decedent's subsequent wife/widow, acting on behalf of the decedent's estate, instituted an action under state law seeking to enforce the former wife's waiver to any claim to the proceeds from the decedent's life insurance policy. Id. The Michigan Supreme Court held that ERISA did not preempt the estate's state law claim to the insurance proceeds, and affirmed the lower court's order directing the former wife "to pay an amount equal to the insurance proceeds to the decedent's estate." Id. In reaching its decision, the Court recognized that, "under ERISA preemption, Michigan law cannot affect ERISA's determination of the proper beneficiary," and "ERISA provides that a plan administrator must distribute the proceeds of the insurance policy to the named beneficiary." Id. at 711 (citations omitted). The Court concluded, however, that after the benefits are properly distributed under ERISA, as they were there, the

30

issue of whether the former wife could "lawfully retain them" was an issue "governed exclusively by Michigan law."  Id.

In Guidry v. Sheet Metal Workers Nat'l Pension Fund, 39 F.3d 1078 (10th Cir. 1994), the Tenth Circuit reached a similar conclusion even as to ERISA pension benefits.  There, the Court held that, while the anti-alienation provision of ERISA precluded a state claim for garnishment against pension benefits before their distribution to a plan participant or beneficiary, nothing in the legislative scheme protected the benefits following their distribution to such participant or beneficiary. Id. at 1082-83.  That is, a creditor could "collect directly from the participant or beneficiary or, as [there], initiate an enforce[ment] procedure against a third-party bank [that held] the funds paid to the participant or beneficiary."  Id.; see Pardee v. Pardee, 112 P.3d 308, 315-16 (Okla. Civ. App. 2005) (holding that ERISA did not preempt allocation of a percentage of the pension plan funds to appellee pursuant to state law following distribution of the funds, as the funds "were no longer entitled to ERISA protection once [they] were distributed"); Hoult v. Hoult, 373 F.3d 47, 54-55 (1st Cir. 2004) (holding that the anti-alienation provision under ERISA applies to pension funds "only while held by the plan administrator and not after they reach the hands of the beneficiary"); Wright v. Riveland, 219 F.3d 905, 919-21 (9th

31

Cir. 2000) (same); Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville, 16 F.3d 52, 54-56 (3rd Cir. 1994) (same); see also DaimlerChrysler Corp. v. Cox, 447 F.3d 967, 974 (6th Cir. 2006) (recognizing principle).

                              IV.

     For the above-stated reasons, I would affirm the judgment of the circuit court in this case.  In my opinion, the circuit court, in a thorough and well-reasoned opinion, correctly concluded that Code § 20-111.1(D) is not preempted by FEGLIA. Therefore, I dissent from the majority's decision reversing the circuit court's judgment.